IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

EILEEN MULLIN,

and

SOPHA GUTHRIE,

Plaintiffs,

v.                                           Civil Action No. 3:24-cv-00816

CAPITAL ONE SERVICES, LLC

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Capital One Services, LLC's ("Capital One") Motion to Dismiss and/or Strike Plaintiffs' First Amended Complaint (the "Motion to Dismiss" or "Motion").[1]  (ECF No. 23.)  Plaintiffs Eileen Mullin and Sopha Guthrie responded in opposition to the Motion, (ECF No. 30), and Capital One replied, (ECF No. 31).

The matter is ripe for disposition.  The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons articulated below, the Court will deny Capital One's Motion to Dismiss and/or Strike.  (ECF No. 23.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

## I. Factual and Procedural Background

A.      **Factual Background**[2]

This lawsuit arises from Capital One's alleged violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., ("FLSA") and the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA").  (ECF No. 20 ¶ 1.)

Plaintiffs are former employees of Capital One.  During the time frame relevant to Plaintiffs' suit, Ms. Mullin worked for Capital One as a "non-managerial[3]  Process Manager or Content Manager."  (ECF No. 20 ¶ 22.)  Ms. Guthrie worked for Capital One as a "non-managerial Process Manager or Ops Associate."  (ECF No. 20 ¶ 23.)  In these roles, Plaintiffs "provid[ed] administrative and clerical support."  (ECF No. 20 ¶¶ 29–30.)  Plaintiffs were "rank-and-file employees with no special training or college degree required," with "no authority to set policy or business objectives," who "did not supervise two or more full-time employees."  (ECF No. 20 ¶¶ 31–32, 66.)

According to Plaintiffs, Capital One misclassified them as exempt from overtime pay requirements and failed to pay them overtime premiums as required by the FLSA and the VOWA.  Plaintiffs state that Capital One has misclassified and failed to pay overtime to other

---

[2] In considering the Motion to Dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to USM.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  To the extent the Complaint's allegations conflict with the content of an exhibit, "the exhibit prevails."  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir.1991)).

[3] The Amended Complaint defines "non-managerial" as referring "to individuals who did not directly supervise two or more full-time Capital One associates."  (ECF No. 20 ¶ 49.)

individuals Capital One employs as non-managerial Process Managers, Ops Associates and Content Managers.  (ECF No. 20 ¶¶ 1, 9, 47–48.)

Plaintiffs further state that "Capital One had actual or constructive knowledge that Process Managers, Ops Associates, and Content Managers were working overtime hours without being paid an overtime premium" (ECF No. 20 ¶ 93), and that "Capital One received the benefit of the work performed by Process Managers, Ops Associates, and Content Managers" (ECF No. 20 ¶ 94).

### 1.    The Role of Non-Managerial Process Managers, Ops Associates, and Content Managers at Capital One

The "primary duties" for Capital One's Process Managers, Ops Associates, and Content Managers are "clerical and administrative support in nature."  (ECF No. 20 ¶ 28.)  They include: (1) "gathering and summarizing information;" (2) "collecting and summarizing data"; (3) "conducting routine testing of processes"; (4) "documenting [their] findings and observations"; (5) "answering calls"; (6) "checking checklists"; (7) "drafting slides"; (8) "answering questions"; (9) "following processes set by others"; (10) "collecting feedback from other employees"; (11) "uploading, posting, deleting, reviewing, summarizing, proofreading, and editing content as directed";  (12) "interacting with vendors; responding to requests from others"; (13) "verifying accuracy of content"; (14) "reviewing information for compliance with guidelines set by others"; (15) "reporting issues to higher levels"; and (16) "promptly responding to emails, calls, setting up meetings, and relaying information between various contacts, and attending meetings."  (ECF No. 20 ¶ 28.)

Capital One compares employees in these three roles "against and amongst each another, as 'peers' . . . for purposes of ranking each of their performances."  (ECF No. 20 ¶ 110.) Employees in these three roles "do not lead any line of business, are not responsible for setting

3

business policy, nor do they manage or set any of Capital One's major business objectives."

(ECF No. 20 ¶ 8.) Further, Capital One "d[oes] not require Process Managers, Ops Associates,

or Content Managers to keep precise track of their hours worked." Capital One "issued Plaintiffs

and other Process Managers, Ops Associates, and Content Managers iPhones and take-home

laptops so that each could perform work for Capital One's benefit remotely and at all hours."

(ECF No. 20 ¶¶ 88, 91.)

Plaintiffs assert that "Capital One's work hours and expectations for its white-collar

workers including non-managerial Process Managers, Ops Associates, and Content Managers

was a 9-hour workday, Mondays through Fridays, or a 45-hour workweek." (ECF No. 20 ¶ 38.)

### a.   Process Managers

Capital One "assigns non-managerial Process Managers to every division, department,

and line of business across the entire company." (ECF No. 20 ¶ 71.) Process Managers "are

akin to white collar assembly-line workers making sure processes are followed."

(ECF No. 20 ¶ 6.) In a recent job posting, Capital One described Process Managers as follows:

> Process Management at Capital One is core to organizational success as it drives
> excellence in operational execution and delivery. Process Managers contribute
> significantly to a well-managed organization, while also driving innovation,
> reimagining the status quo, and enhancing the customer experience.

(ECF No. 20 ¶ 5.) Capital One "internally refers to its employees with supervisory

responsibilities as 'People Managers,' or 'People Leaders.'" (ECF No. 20 ¶ 51.) Plaintiffs assert

that, despite their title, "the majority of Capital One's Process Managers . . . do not supervise" or

"'manage' [] anyone." (ECF No. 20 ¶ 3.) Further, "[t]he business goals, objectives,

'innovation,' and 'reimagining' is all done . . . multiple job levels above the Plaintiffs."

(ECF No. 20 ¶ 7.)

4

### b.    Ops Associates

Capital One's Operations Associates, or "Ops Associates," also perform duties that are "primarily clerical in nature" and "require strict adherence to checklist-oriented functions[] to assist and ensure that various Capital One 'processes' are followed." (ECF No. 20 ¶ 76.) Among other tasks, Ops Associates "report[] any breakdowns in such process, draft[] slides or 'decks', [and] 'manag[e] relationships.'" (ECF No. 20 ¶ 76.) Ops Associates "do not originate or create any unique policies or procedures." (ECF No. 20 ¶ 76.) They are neither required nor allowed "to exercise discretion or independent judgment involving matters of significance in carrying out their duties." (ECF No. 20 ¶ 77.)

### c.    Content Managers

Finally, Capital One's Content Managers also perform duties that are "primarily clerical in nature." (ECF No. 20 ¶ 78.) Content Managers "require strict adherence to checklist-oriented functions, to assist and ensure that various Capital One content 'processes' are followed prior to publication." (ECF No. 20 ¶ 78.)

"[T]he majority of Capital One's . . . Content Managers do not supervise" or "'manage' [] anyone." (ECF No. 20 ¶ 3.) "Non-managerial Content Managers do not originate or create any unique content." (ECF No. 20 ¶ 78.) Instead, "they summarize, edit, and review content for compliance with the 'processes' and standards determined by higher-ups at Capital One." (ECF No. 20 ¶ 78.) They also "carry out support duties resulting in the publication of content." (ECF No. 20 ¶ 78.) They are neither required nor allowed "to exercise discretion or independent judgment involving matters of significance in carrying out their content management duties." (ECF No. 20 ¶ 80.)

2.    **The Parties**

a.    **Plaintiff Eileen Mullin**

Plaintiff Eileen Mullin was hired by Capital One in 2014 and worked continuously for Capital One until the termination of her employment on or about November 1, 2024.  (ECF No. 20 ¶¶ 17, 20.)  She worked as a Content Manager until Capital One "transferred" her to a Process Manager role.  Ms. Mullin's "primary duties" in both non-managerial roles were to "provide[] administrative and clerical support."  (ECF No. 20 ¶ 29.)  Ms. Mullin worked mainly from Capital One's location in Goochland County, Virginia, known as the "West Creek" campus, but also worked remotely from home.  (ECF No. 20 ¶ 26.)

b.    **Plaintiff Sopha Guthrie**

Plaintiff Sopha Guthrie was hired by Capital One on October 4, 1999, and worked continuously for Capital One until the termination of her employment on or about December 8, 2024.[4]  (ECF No. 20 ¶ 18.)  She worked as an Ops Associate until Capital One "transferred" her to a Process Manager role.  (ECF No. 20 ¶ 27.)  Ms. Guthrie's "primary duties" in both non-managerial roles were to "provide[] administrative and clerical support."  (ECF No. 20 ¶¶ 25, 30.)  Ms. Guthrie "worked remotely from home from the COVID pandemic until March 2024 when Capital One transferred her to the Process Manager role, at which point she worked in a 'hybrid' capacity splitting time between both Capital One's West Creek campus in Goochland County, and remotely from home."  (ECF No. 20 ¶ 27.)

---

[4] ECF No. 20 ¶ 21 contradicts ECF No. 20 ¶ 18, listing November 1, 2024, as the date of the termination of Ms. Guthrie's employment, rather than December 8, 2024.  The Court presumes this to be a scrivener's error, and treats December 8, 2024 as the correct date of the termination of Ms. Guthrie's employment.

### c.    Defendant Capital One

Defendant Capital One is a limited liability company with its principal office in McLean, Virginia. (ECF No. 20 ¶ 19.)  It has a "major work location in Goochland County, Virginia" where it employs over 13,000 people.  (ECF No. 20 ¶ 19.)

### 3.    Capital One's Non-Managerial Process Managers, Ops Associates, and Content Managers, including Plaintiffs, Regularly Worked Over 40-Hour Weeks

Capital One's "work hours and expectations" for its non-managerial Process Managers, Ops Associates, and Content Managers consisted of "a 9-hour workday, Mondays through Fridays, or a 45-hour workweek."  (ECF No. 20 ¶ 38.)

"When she worked at West Creek, [Ms.] Mullin's work hours were typically 7:30 a.m. to 4:00 p.m., or later, Mondays through Fridays", amounting to approximately 42.5 hours a week. (ECF No. 20 ¶ 33.)  When she worked remotely, "[Ms.] Mullin typically logged in around 6:30 a.m. and logged off around 4:00 p.m.", amounting to approximately 47.5 hours a week. (ECF No. 20 ¶ 34.)  She "typically worked through lunch or ate lunch while working." (ECF No. 20 ¶ 37.)  Ms. Mullin "typically worked in excess of 50 hours per week[,] including time working on weekends."  (ECF No. 20 ¶ 45.)

When she worked exclusively remotely, Ms. Guthrie "typically began working between 7-8 a.m. and worked until 5-6 p.m.", amounting to approximately 45–55 hours a week, and in the evenings after work "would respond to emails or do any other work as needed." (ECF No. 20 ¶ 35.)  When she worked both remotely and at West Creek, Ms. Guthrie's "work hours typically began from home by logging in around 7:30-7:45 a.m., then she typically arrived at West Creek around 9 a.m. and left around 5 p.m. and would do work from home again in the evenings as needed, Mondays through Fridays," amounting to over 40 hours a week.

7

(ECF No. 20 ¶ 36.)  Like Ms. Mullin, Ms. Guthrie also "typically worked through lunch or ate

lunch while working."  (ECF No. 20 ¶ 37.)  Ms. Guthrie "regularly worked more than 40 hours

per week[,] including time working on weekends."  (ECF No. 20 ¶ 46.)  Both Plaintiffs "often

checked their emails, slack,[5] and other messages late into the evenings and before going to bed

each night, as well as on weekends and on vacation."  (ECF No. 20 ¶ 42.)

### 4.    Statutory Framework

#### a.    The Fair Labor Standards Act

The Fair Labor Standards Act provides that "no employer shall employ any of [its]

employees . . . for a workweek longer than forty hours unless such employee receives

compensation for his [or her] employment in excess of the hours above specified at a rate not

less than one and one-half times the regular rate at which he [or she] is employed."  29 U.S.C.

§ 207(a)(1).[6]  Any employer who violates the FLSA's overtime requirements is liable "to the

employee or employees affected in the amount of their unpaid minimum wages, or their unpaid

overtime compensation, as the case may be, and in an additional equal amount as liquidated

---

[5] Slack is a workplace communication platform that Capital One employees use for
instant messaging.

[6] More fully as to this provision, the FLSA states:

Except as otherwise provided in this section, no employer shall employ any of [its]
employees who in any workweek is engaged in commerce or in the production of
goods for commerce, or is employed in an enterprise engaged in commerce or in
the production of goods for commerce, for a workweek longer than forty hours
unless such employee receives compensation for [that] employment in excess of
the hours above specified at a rate not less than one and one-half times the regular
rate at which he is employed.

29 U.S.C. § 201(a)(1).

damages." 29 U.S.C. § 216(b).[7] More than one plaintiff may bring an action under the FLSA

"[o]n behalf of himself [or herself] or themselves and other employees similarly situated." *Id.*

However, if plaintiffs seek to aggregate their overtime claims under the FLSA, they must do so

in the form of a collective action, which requires additional plaintiffs to opt into an FLSA action,

rather than a Rule 23 class action: "No employee shall be a party plaintiff to any such action

[under the FLSA] unless [they] give[] [their] consent in writing to become such a party and such

consent is filed in the court in which such action is brought." *Id.*

The statute of limitations for bringing a suit under the FLSA is two years.

29 U.S.C. § 255(a).[8] However, if a plaintiff demonstrates that an FLSA violation was a "willful

violation," the statute of limitations extends to three years. *Id.*

---

[7] More fully as to this provision, the FLSA states:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) or 218d of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) or 218d of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless [they] gives [their] consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

[8] More fully as to this provision, the FLSA states:

> Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages,

### b.    The Virginia Overtime Wage Act

The Virginia Overtime Wage Act establishes overtime pay protections for Virginians

identical to those of the FLSA by specifically incorporating it:

> Any employer that violates the overtime pay requirements of the federal Fair Labor
> Standards Act of 1938, 29 U.S.C. § 201 et seq., . . . shall be liable to the employee
> for the applicable remedies, damages, or other relief available under the federal Fair
> Labor Standards Act in an action brought pursuant to the process in subsection J of
> § 40.1-29.

Va. Code § 40.1-29.2.[9]  Indeed, the VOWA incorporates the FLSA definitions of "employer" and

"employee," as well as all of the FLSA's "applicable exemptions, overtime calculation methods,

---

> under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or
> the Bacon-Davis Act—
>
> (a) if the cause of action accrues on or after May 14, 1947—may be commenced
> within two years after the cause of action accrued, and every such action shall be
> forever barred unless commenced within two years after the cause of action
> accrued, except that a cause of action arising out of a willful violation may be
> commenced within three years after the cause of action accrued.

29 U.S.C. § 255(a).

[9] More fully, the VOWA provides:

> Any employer that violates the overtime pay requirements of the federal Fair Labor
> Standards Act of 1938, 29 U.S.C. § 201 et seq., as amended, and any regulations,
> guidance, or rules adopted pursuant to the overtime pay provisions of such federal
> act or any related governing case law shall be liable to the employee for the
> applicable remedies, damages, or other relief available under the federal Fair Labor
> Standards Act in an action brought pursuant to the process in subsection J of § 40.1-
> 29. For the purposes of this section, "employer" and "employee" shall have the
> meanings ascribed to them under the federal Fair Labor Standards Act and all
> applicable exemptions, overtime calculation methods, methods of overtime
> payment, or other overtime provisions within the federal Fair Labor Standards Act
> and any attendant regulations, guidance, or rules shall apply. Any action brought
> pursuant to this section shall accrue according to the applicable limitations set forth
> in the federal Fair Labor Standards Act.

Va. Code § 40.1-29.2.

10

methods of overtime payment," the FLSA's "attendant regulations, guidance, or rules," and all of

the FLSA's "applicable limitations." *Id.*

      The VOWA also mirrors the FLSA's collective action procedure:

> [I]f an employer fails to pay wages to an employee in accordance with this section, the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. § 216(b).

Va. Code § 40.1-29(J).[10]  Because the VOWA incorporates the FLSA's "applicable limitations,"

VOWA claims are subject to the FLSA's statute of limitations.  Va. Code § 40.1-29.2.

## B.    <u>Procedural History</u>

      On November 15, 2024, Ms. Mullin filed a Complaint against Capital One alleging

failure to pay overtime premiums to individuals it employs as Process Managers, Ops

Associates, and Content Managers in violation of the FLSA and the VOWA.  (ECF No. 1 ¶ 1.)

---

[10] This provision is contained within the Virginia Wage Payment Act ("VWPA"), which the VOWA also incorporates by reference.  The VWPA provides, in relevant part, as follows:

> In addition to any civil or criminal penalty provided by this section, and without regard to any exhaustion of alternative administrative remedies provided for in this section, if an employer fails to pay wages to an employee in accordance with this section, the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. § 216(b), against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in subsection G, and reasonable attorney fees and costs. If the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs.

Va. Code § 40.1-29(J).

On December 27, 2024, Ms. Guthrie joined the suit. (ECF No. 6.) On January 31, 2025, Plaintiffs filed their First Amended Collective and Class Action Complaint (the "Amended Complaint"). (ECF No. 20.)

In the Amended Complaint, Plaintiffs propound two causes of action against Capital One. First, Plaintiffs assert that Capital One "violate[d] the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiffs and the other similarly situated individuals their required overtime compensation." (ECF No. 20 ¶ 147.) Second, Plaintiffs contend that Capital One "violated VOWA by failing to pay Plaintiffs, and those similarly situated[,] an overtime premium for all hours worked beyond 40 hours per week." (ECF No. 20 ¶ 155.)

Based on these allegations, Plaintiffs seek to aggregate the FLSA and VOWA overtime claims of similarly situated Process Managers, Ops Associates, and Content Managers under two different mechanisms. First, Plaintiffs seek certification of a nationwide FLSA opt-in collective action under 29 U.S.C. § 216(b), (ECF No. 17 ¶ 117), comprised of all Process Managers, Ops Associates, and Content Managers who have worked for Capital One in the last three years and "[] [were] classified as exempt from overtime laws, [] worked over forty hours in any week, and [] [were] not a 'people manager' or 'people leader' in any such week." (ECF No. 20 ¶ 125.)

Second, Plaintiffs seek to certify under Federal Rule of Civil Procedure 23(b)(3) a nationwide opt-out class action of Process Managers, Ops Associates, and Content Managers who have worked for Capital One in Virginia in the past three years and suffered violations of the VOWA's overtime requirements. (ECF No. 20 ¶ 134.) Plaintiffs seek certification of three subclasses composed of Process Managers, Ops Associates, and Content Managers, respectively. Plaintiffs' proposed subclasses would consist of all Virginia-based Process Managers, Ops Associates, and Content managers who "[] [were] classified as exempt from overtime laws, []

12

worked over forty hours in any week, and [] [were] not a 'people manager' or 'people leader' in any such week." (ECF No. 20 ¶ 134.) Plaintiffs estimate that "as many as 1,000 individuals are putative class members for the VOWA claims." (ECF No. 20 ¶ 140.)

On February 24, 2025, Capital One filed the present Motion to Dismiss and/or Strike and its Memorandum in Support. (ECF Nos. 23, 24.) Capital One asks the Court to strike Plaintiffs' various claims under Federal Rule of Civil Procedure 12(f) and to dismiss other of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). Specifically, Capital One asks the Court to strike Plaintiffs' Rule 23 VOWA class action allegations, (ECF No. 24, at 3–4), strike Plaintiffs' FLSA collective action allegations, (ECF No. 24, at 4), dismiss Plaintiffs' individual causes of action under the FLSA and the VOWA (ECF No. 24, at 4), and strike Plaintiffs' allegations to the extent that they go beyond the FLSA's statute of limitations, (ECF No. 24, at 4). Plaintiffs filed a response, (ECF No. 30), and Capital One filed a reply, (ECF No. 31).

For the reasons articulated below, the Court will deny the Motion to Dismiss and/or Strike.

## II. Standards of Review

### A.    Rule 12(b)(6) Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for

13

relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, when viewed in the light most favorable to the plaintiff, these allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Rule 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts

for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 570 (citations omitted).

### B.      Fed. R. Civ. P. Rule 12(f) and 23(d)(1)(D) Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The Court may do so "on its own" or "on motion made by a party." Fed. R. Civ. P. 12(f)(1)–(2).  Relatedly, in addressing a plaintiff's class allegations, the Court may "require that the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(d)(1)(D).  Whether to grant a motion to strike under Rule 12(f) "falls within the sound discretion of the district court." *SS Richmond LLC v. Harrison*, 640 F. Supp. 3d 453, 483 (E.D. Va. 2022).  However, parties seeking to strike pleadings face a high bar: "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal citations omitted).  This is especially true when a defendant seeks to strike class allegations:  a court should strike class allegations prior to discovery only if the allegations are "facially and inherently deficient." *Ellison v. Inova Health Care Servs.*, 692 F. Supp. 3d 548, 555 (E.D. Va. 2023) (internal citations omitted).  Moreover, "it is a 'generally accepted view that a motion to strike for redundancy ought not to be granted in the absence of a clear showing of prejudice to the movant.'" *See Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, 709 F. Supp. 2d 432, 437 (E.D.

15

Va. 2010); *see also Hill v. Pepperidge Farm, Inc.*, No. 3:22-cv-97 (HEH), 2022 WL 3371321, at *2 (E.D. Va. Aug. 16, 2022).

### III. Analysis

In its Motion, Capital One raises five arguments. First, Capital One argues that the Court should strike Plaintiffs' Rule 23 class allegations as violative of the Rules Enabling Act, 28 U.S.C. § 2072(b), and the United States Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). (ECF No. 24, at 8–17.) Second, Capital One contends that even if Plaintiffs may bring their claims under Rule 23, the Court should strike Plaintiffs' class allegations as having failed to meet the standards of Rule 23. (ECF No. 24, at 17–27.) Third, Capital One asserts that the Court should dismiss or strike Plaintiffs' collective action allegations as having failed to meet the standards of the FLSA. (ECF No. 24, at 27–28.) Fourth, Capital One states that Plaintiffs' individual claims fail to support plausible claims for relief (ECF No. 24, at 28–31.) Finally, Capital One maintains that the Court should strike Plaintiffs' allegations insofar as they seek damages beyond the FLSA's two-year statute of limitations. (ECF No. 24, at 31.)

Accepting Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, the Court rejects each of these arguments. First, Plaintiffs' class allegations do not violate the Rules Enabling Act nor the Supreme Court's decision in *Shady Grove*. As to Capital One's second and third arguments, challenging the sufficiency of Plaintiffs' Rule 23 class and FLSA collective action allegations is premature. Fourth, Plaintiffs state valid individual claims under the FLSA and the VOWA. Fifth and finally, at this stage, Plaintiffs sufficiently plead willful violations of the FLSA, entitling them to a three-year statute of limitations.

16

A.   **Courts Have Consistently Determined that the Type of Rule 23 Class Allegations at Bar Do Not Violate the Rules Enabling Act Because the VOWA's Collective Action Provision is Not Substantive**

The VOWA provides that plaintiffs who seek to aggregate their overtime claims "may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as *a collective action* consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. § 216(b)." Va. Code § 40.1-29(J) (emphasis added). But Plaintiffs seek certification of Rule 23 subclasses, rather than certification of a collective action, under the VOWA. (ECF No. 20 ¶ 155.) Capital One argues that the Court should strike Plaintiffs' Rule 23 class allegations under Rules 12(f) and 23(d)(1)(D) because VOWA plaintiffs are barred from using Rule 23's opt-out class action mechanism, (ECF No. 24, at 8–17):

> VOWA does not authorize *opt-out* class claims [under Rule 23] but instead requires Plaintiffs to use a collective action *opt-in* process. Plaintiffs' attempt to circumvent this requirement would "abridge, enlarge or modify" the parties' substantive rights in violation of the Rules Enabling Act, 28 U.S.C. § 2072(b), and would be contrary to the Virginia Legislature's clear intent that collective-action rights under VOWA mirror collective-action rights under the FLSA.

(ECF No. 24, at 8 (emphasis in original).)

Courts in the Eastern District of Virginia have rejected this argument persuasively at least four times. *See Fierbaugh v. Capital One Servs., LLC*, No. 3:24-cv-901 (HEH), ECF No. 35 (E.D. Va. Sept. 10, 2025) (rejecting, in a separate case, Capital One's identical arguments regarding the VOWA and the Rules Enabling Act); *Glennon v. Anheuser-Busch, Inc.*, No. 4:21-cv-141, 2022 WL 18937383 (E.D. Va. Sept. 22, 2022); *Hatcher v. Cnty. of Hanover*, No. 3:23-cv-325 (JAG), 2024 WL 3357839, at *2–3 (E.D. Va. July 10, 2024); *Midkiff v. Anthem Cos., Inc.*, 748 F. Supp. 3d 376, 387–88 (E.D. Va. 2024). Capital One argues that the Court should reject this line of cases and hold that Plaintiffs may only aggregate their VOWA claims through a class action mechanism. (ECF No. 24, at 15.) Having reviewed the relevant decisions,

17

the Court declines Capital One's invitation to do so.  The Court will deny Capital One's motion to strike Plaintiffs' class action allegations.[11]

### 1.    Legal Standard:  The Rules Enabling Act Determines Whether Federal Rules Displace State Law

The Rules Enabling Act provides that the United States Supreme Court has the power "to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals."  28 U.S.C. § 2072(a).[12]  But the rules promulgated by the Supreme Court, including the

---

[11] Plaintiffs argue that that a motion to strike "is not the proper method" for Capital One's Rules Enabling Act objection because Capital One has "not shown that the class allegations cause any prejudice to them, nor have they demonstrated that the class allegations are 'redundant, immaterial, impertinent, or scandalous matter.'"  (ECF No. 30, at 7 (quoting Fed. R. Civ. P. 12(f)).)  The Court disagrees.  While Plaintiffs correctly identify that nowhere in Capital One's Motion nor its Reply does Capital One allege that Plaintiffs' class allegations are "redundant, immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f), this does not necessarily end the Court's analysis at this stage.  District courts have entertained motions to strike even without a showing of redundancy, immateriality, impertinence, or scandal when the motion alleges facial defects in class allegations.  *See Glennon v. Anheuser-Busch, Inc.*, No. 4:21-cv-141, 2022 WL 18937383 (E.D. Va. Sept. 22, 2022) (denying motion to strike on Rules Enabling Act grounds on the merits).

The Court sees no prejudice in addressing Capital One's Rules Enabling Act objection now.  Although Capital One could, and likely will, raise the same arguments regarding the Rules Enabling Act at the class certification stage as it has in its Motion, and discovery may not alter Capital One's legal arguments, this Court, like others in our district, will address the merits of Capital One's objection in order to establish a full record here.

[12] The Rules Enabling Act provides:

(a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.

(b) Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

Federal Rules of Civil Procedure, may not "abridge, enlarge or modify any substantive right."

*Id.* § 2072(b). If a state law establishes a "substantive right," the Federal Rules of Civil

Procedure "must yield" to the state law. *Glennon*, 2022 WL 18937383, at *2. Under the Rules

Enabling Act, federal procedural rules are displaced by state law "if, but only if, they *come into*

*conflict* with 'substantive' state law." *Id.* at *2–3 (emphasis added).

      The United States Supreme Court established—albeit on a fractured basis—the test that

federal courts must apply when federal procedural rules seemingly conflict with state law. In

*Shady Grove*, the Supreme Court explained that federal courts apply a two-step framework:

> [1] The court must first determine whether the scope of the federal rule is
> "sufficiently broad" to "control the issue" before the court, "thereby leaving no
> room for the operation" of seemingly conflicting state law. . . . [2] If . . . the federal
> rule is "sufficiently broad to control the issue before the Court," such that there is
> a "direct collision," the court must decide whether application of the federal rule
> "represents a valid exercise" of the "rulemaking authority . . . bestowed on this
> Court by the Rules Enabling Act."

559 U.S. at 421–22 (Stevens, J., concurring) (internal citations omitted).

      In *Shady Grove*, differences emerged as the Court described the approach to be taken in

the second step of the inquiry. In the Court's plurality opinion, Justice Scalia found that, at step

two, courts must analyze only the *federal* procedural rule at issue and ask whether the federal

procedural rule "really regulates procedure." *Id.* at 411. According to the *Shady Grove* plurality,

so long as the federal rule is procedural rather than substantive, the federal procedural rule does

not "abridge, enlarge, or modify" any substantive state rights and displaces the state law.

---

(c) Such rules may define when a ruling of a district court is final for the purposes
of appeal under section 1291 of this title.

28 U.S.C. § 2072.

Justice Stevens authored a lone concurrence that a majority of courts have found controls the *Shady Grove* analysis in a different second step. Under Justice Stevens' test, courts must analyze the *state* law at issue: "A federal rule . . . cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423 (Stevens, J., concurring). If the state law is substantive, the federal rule cannot displace the state law. Justice Stevens emphasized that litigants who claim a federal rule violates the Rules Enabling Act face a high bar: "The mere possibility that a federal rule would alter a state-created right is not sufficient. There must be little doubt." *Id.* at 432. (Stevens, J., concurring).

Perhaps because the *Shady Grove* plurality and the concurrence explicitly reject the other's analytical approach, the United States Court of Appeals for the Fourth Circuit has not weighed in on which *Shady Grove* test controls. Recently, the Fourth Circuit applied both formulations when faced with a *Shady Grove* question. *See Grice v. Independent Bank*, 147 F.4th 440, 449 (4th Cir. 2025). This seems prudent. Accordingly, the Court will first determine, at *Shady Grove* step one, whether the VOWA and Rule 23 conflict. Concluding that the VOWA and Rule 23 are in conflict, the Court proceeds to *Shady Grove* step two, and applies the *Shady Grove* plurality and the concurrence's tests to the Capital One's Rules Enabling Act objection.

### 2.    *Shady Grove* Step One:  the VOWA and Rule 23 Conflict

Little doubt exists that, at *Shady Grove* step one, the Court must determine whether the VOWA and Rule 23 "are actually in conflict." *Glennon*, 2022 WL 18937383, at *3. The VOWA and Rule 23 are "directly at odds." *Midkiff v. Anthem Cos., Inc.*, 748 F. Supp. 3d 376, 387 (E.D. Va. 2024). Where Rule 23 "categorically imposes an opt-out mechanism" on parties

who wish to aggregate their claims, *id.*, the VOWA allows plaintiffs to aggregate overtime claims only by using an opt-in collective action mechanism. *See Glennon*, 2022 WL 18937383 at \*4; *Midkiff*, 748 F. Supp. 3d at 387. The Court concludes, as have its sister and brother courts, that at *Shady Grove* step one, the VOWA and Rule 23 plainly conflict.

### 3.    *Shady Grove* Step Two:  Rule 23 Does Not Violate the Rules Enabling Act Under the *Shady Grove* Plurality or Concurrence

#### a.    *Shady Grove* Step Two:  Applying the *Shady Grove* Plurality Opinion, Rule 23 Displaces the VOWA

According to Justice Scalia's *Shady Grove* plurality, at step two, courts must examine only the nature of the *federal* rule at issue. *Shady Grove*, 559 U.S. at 410. Applying the plurality's analytical framework, the Court must determine whether Rule 23, the federal rule at issue here, "really regulates procedure." It does. *Shady Grove* itself answers this question. In *Shady Grove*, the Supreme Court examined Rule 23 and determined that it "really regulates procedure":

> Rule 23—at least insofar as it allows willing plaintiffs to join their separate claims against the same defendants in a class action—falls within [the Rules Enabling Act's] authorization. A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged.

*Shady Grove*, 559 U.S. at 408. The same holds true here. Rule 23 remains a procedural rule. Accordingly, applying the *Shady Grove* plurality's test, Rule 23 displaces the VOWA, and Plaintiffs may proceed with their VOWA claims as a class action.[13] In the interest of creating a

---

[13] The Court's decision means only that Capital One's motion to strike is denied. The Court refrains from deciding whether Plaintiffs' class allegations satisfy the requirements of Rule 23 at this time.

full record, the Court will now review the *Shady Grove* concurrence applied to the VOWA and Rule 23.

###     b.     *Shady Grove* Step Two:  Applying the *Shady Grove* Concurrence, Rule 23 Displaces the VOWA

Applying Justice Stevens' analytical framework introduces a different step two:  the Court must examine the nature of the *state* law at issue.  Justice Stevens found that federal rules cannot "displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423 (Stevens, J., concurring).

Federal courts have taken a variety of approaches to determine whether, applying Justice Stevens' test, plaintiffs may proceed with class action allegations when state law would only permit plaintiffs to proceed through a collective action.[14]  But courts generally acknowledge that Justice Stevens examined three factors at *Shady Grove* step two:  (1) the legislative history of the state law at issue, (2) whether the state law is located in the state's procedural code or located in the state's substantive law, and (3) whether the state law applies only to specific claims under the state's substantive law.  The Court applies these factors below and will deny Capital One's

---

[14] Federal courts outside of the Eastern District of Virginia have split in addressing *Shady Grove* step two in similar circumstances.  Some courts permit plaintiffs to certify Rule 23 classes when the underlying state law would only permit a collective action. *See, e.g.*, *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 264–65 (3d. Cir. 2012); *Gandy v. RWLS, LLC*, 308 F. Supp. 3d 1220, 1225–29 (D.N.M. 2018); *Heppard v. Dunham's Athleisure Corp.*, 705 F. Supp. 3d 833, 838–42 (E.D. Mich. 2023).  Other courts refuse to certify Rule 23 class actions when state law would only permit collective actions. *See, e.g.*, *Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 60–62 (D.D.C. 2012); *Hine v. OhioHealth Corp.*, 680 F. Supp. 3d 861, 865–70 (S.D. Ohio 2023); *Garner v. Cleveland Clinic Found.*, 735 F. Supp. 3d 867, 872–79 (N.D. Ohio 2024).  But these courts reviewed their own state statutes, so their analyses cannot control this Court's decision. *See Fierbaugh*, 2025 WL 2617704, at *3 ("Although some courts outside this district have concluded that Rule 23 class actions are impermissible under circumstances like those here, those courts were applying different statutes from different states.").

motion to strike because doubt remains as to whether or not the VOWA's collective action provision is substantive.

      **c.**    **The VOWA Guarantees a Substantive Right to Overtime Compensation, Not a Substantive Right to a Collective Action**

Before the Court undertakes Justice Stevens' analysis of the state law at issue, the Court identifies the overarching concern before it: what substantive rights the VOWA confers. According to Capital One, the VOWA's collective action procedure confers substantive rights on employees by "confirming that their claims can be litigated only where they have affirmed their intent to be bound by the court's judgment." (ECF No. 24, at 11.) And the VOWA confers substantive rights on employers "not to be sued in representative actions absent each plaintiff-employee's consent." (ECF No. 24, at 11.)

The Court cannot so find. It seems clear to this Court that the *substantive* "state right or remedy" bestowed by the VOWA is the right "to sue individually or jointly *for unpaid wages and overtime*." *Glennon*, 2022 WL 18937383, at *5 (emphasis added). That right remains "available without regard to whether or not [it is] pursued via individual suit, joint suit, or a representative action." *Id.* "How other claimants are included in the suit" is not a matter intertwined with the VOWA's grant of substantive rights, but rather "is the [procedural] *mechanism* through which the right is enforced." *Heppard v. Dunham's Athleisure Corp.*, 705 F. Supp. 3d 833, 839 (E.D. Mich. 2023) (citing *Glennon*, 2022 WL 18937383, at *5) (emphasis added). The VOWA's collective action procedure "does not change the scope of the remedy," *id.*, namely an employee's entitlement to overtime compensation at one and one-half times their regular wage rate. Va. Code § 40.1-29.2 (adopting FLSA's standard for overtime wage compensation). This finding alone could dispose of this case.

But in the interest of a full record, the Court will apply Justice Stevens' concurrence to determine whether the VOWA's collective action provision is substantive or procedural. Even under that analysis, the Court finds that enough doubt in answering that question remains such that the Court finds the collective action provision procedural.

> **d.    The VOWA's Collective Action Provision is Not Substantive Even Applying Justice Stevens' Analysis at Step Two**

>> **i.    The VOWA's Legislative History Suggests that its Collective Action Provision is Procedural, Not Substantive**

In *Shady Grove*, Justice Stevens appears to place the most emphasis on the first factor in looking to whether a statute is procedural: its legislative history. In his concurrence, Justice Stevens examined in detail the legislative history of the state law at issue in order to determine whether that law was properly characterized as procedural or substantive. *Shady Grove*, 559 U.S. at 433–436. Capital One argues that the VOWA's legislative history indicates that the Virginia legislature intended the VOWA to confer substantive rights. (ECF No. 24, at 14–15.) But the VOWA's legislative history supports a reading of the VOWA that renders its collective action provision procedural.

Capital One cites only a single statement made by the VOWA's chief sponsor, Delegate Mike Mullin, that the VOWA "allows for individuals to be able to take a lawsuit in state court for the loss of overtime wages in the same way that they would be able to do in federal court." (ECF No. 24, at 14 (citing Va. S. Com. & Lab. Comm. (Feb. 22, 2021) (testimony of Del. Mike Mullin), at 19:22-21:16, https://tinyurl.com/bdz5decf).) According to Capital One, this statement shows that "Virginia thus sought to adopt the FLSA in its entirety, including its requirement that litigants may only proceed with an opt-in collective action." (ECF No. 24, at

14.)  But Capital One omits an important portion of Delegate Mullin's statement.  Delegate

Mullin added that:

> [VOWA] allows for individuals to be able to take a lawsuit in state court for the
> loss of overtime wages in the same way that they would be able to do in federal
> court.  As you and others I'm sure are very aware, *it's really expensive and really
> kind of a pain in the rear end to go to federal court as opposed to go down to your
> local district court.  This just allows that.*  It mirrors what we already have in federal
> law. . . Mr. Chair just to put a finer point on it, this keeps us in line with federal
> law.  It just allows for enforcement in local court.

Va. S. Com. & Lab. Comm. (Feb. 22, 2021) (testimony of Del. Mike Mullin), at 19:22-21:16,

https://tinyurl.com/bdz5decf (emphasis added).  The Court has identified no other legislative

history.

But this comment does not denote that the VOWA was meant to supplant the FLSA.  It

more readily suggests that Virginia intended the VOWA as a cost-saving measure.  The

VOWA's incorporation of the FLSA's overtime standards merely simplified litigants' access to a

local forum to pursue overtime wage claims.  The VOWA's chief sponsor made no mention of

the importance of the FLSA's collective action procedure, nor is there any other aspect of the

VOWA's legislative history to suggest this.  And "given that there are two plausible competing

narratives" in the legislative history, *Shady Grove*, 559 U.S. at 436 (Stevens, J., concurring), the

Court cannot deem the VOWA's collective action provision to be substantive:  doubt remains

about the nature of the collective action provision.

### ii.    Given the VOWA's Overarching Goal, its Location in Virginia's Statutory Code Does Not Require the Court to Find its Collective Action Provision Substantive

Second, Justice Stevens also noted the location of the state law within the state's larger

statutory code:

> [G]iven that there are two plausible competing narratives [regarding the nature of
> the state law at issue], it seems obvious to me that we should respect the plain

textual reading of [the state law], *a rule in New York's procedural code* about when to certify class actions brought under any source of law, and respect Congress' decision that Rule 23 governs class certification in federal courts.

*Shady Grove*, 559 U.S. at 436 (Stevens, J., concurring) (emphasis added).  Capital One correctly notes that some courts, applying Justice Stevens' test, "conclude that a provision is substantive when—as here—it is found 'in the same paragraph of the same statute that create[d] the underlying substantive right." (ECF No. 24, at 10 (quotation omitted).)

To be sure, the VOWA's collective action procedure "'is not contained in a generally applicable procedural rule but, rather, in the same paragraph of the same statute that creates the underlying substantive right.'" (ECF No. 24, at 10 (quoting *Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 62 (D.D.C. 2012).)  But this factor "did not weigh heavily in [Justice Stevens'] *Shady Grove* analysis." *Garner v. Cleveland Clinic Found.*, 735 F. Supp. 3d 867, 875 (N.D. Ohio 2024).  Given Justice Stevens' "merely passing mention of the New York statute's location in the state code," placing "significant weight . . . on this single factor appears misplaced." *Roberts v. C.R. England, Inc.*, 321 F. Supp. 3d 1251, 1259 (D. Utah 2018).  Far more important to the Court's analysis is whether the VOWA's collective action provision "define[s] the scope of the state-created right."  Courts have aptly noted that "[w]herever located, the opt-in requirement simply is not part of Virginia's framework of *substantive* rights and remedies—even if, like most procedural rules, it may have some effect on litigation outcomes." *Glennon*, 2022 WL 18937383, at *4 (citing Justice Stevens' *Shady Grove* concurrence).  As discussed above, nothing in the VOWA's legislative history indicates that the Virginia legislature intended the collective action provision to guarantee substantive rights, especially given its overarching call to allow a cause of action for unpaid wages and overtime.

        **iii.**    **The VOWA's Application to a Limited Set of Claims Does Not Command a Finding that the Collective Action Provision is Substantive Because the VOWA's Overarching Mission and Legislative History Indicate that the Collective Action Provision is Procedural**

Third and finally, Justice Stevens observed that the state law at issue there "expressly and unambiguously applie[d] not only to claims based on [state] law but also to claims based on federal law or the law of any other State." *Shady Grove*, 559 U.S. at 432 (Stevens, J., concurring). Courts have relied on that finding to dub as procedural state laws that apply widely to state and federal claims. The VOWA's collective action provision, in contrast, is not widely applicable. The VOWA provides that its collective action provision applies only to claims for overtime pay under Virginia law. Capital One argues that "'[t]his limited applicability suggests that' VOWA 'is intended to solely impact the rights and remedies available under [VOWA's] overtime provision,'" (ECF No. 24, at 11 (internal citations omitted)), which may weigh in favor of characterizing the VOWA's collective action procedure as substantive. But given the VOWA's overarching purpose and its legislative history, the Court cannot conclude that Capital One meets the high bar of establishing the collective action provision as substantive.

In short, the Court remains doubtful that the VOWA's collective action procedure is properly characterized as substantive. The collective action provision does not change the scope of an employee's entitlement to overtime compensation. And the VOWA's legislative history does not suggest that the Virginia legislature viewed the VOWA's substantive guarantee of overtime wages as "so intertwined with" the collective action provision that the Court can declare the collective action provision as substantive.

27

e.    **Capital One's Remaining Arguments Fail**

Capital One presents two additional reasons why the VOWA's collective action provision protects substantive rights: its effect on the statute of limitations and the need for comity. Neither argument prevails.

First, Capital One's contention that the VOWA's collective action procedure grants substantive rights because it "preserves traditional statute of limitations rules for party plaintiffs," (ECF No. 24, at 12), does not pass muster because it omits consideration of equitable tolling. Capital One suggests that "[u]nlike the statute of limitations for a Rule 23 class action—which the filing of the complaint tolls—the statute of limitations for a FLSA collective action claim continues to run for a potential claimant until" they opt in. (ECF No. 24, at 12–13 (quotation omitted).) As a result, "[i]f the Court allows Plaintiffs to bring VOWA claims under Rule 23, it will expand the statute of limitations available to absent class members because the effect of recognizing a Rule 23 opt-out class would be to toll the limitations period that otherwise would continue to run under state law." (ECF No. 24, at 13.)

While it is true that state statutes of limitations are traditionally considered substantive rules, Capital One erroneously conflates statutes of limitations with equitable tolling rules. The filing of a complaint tolls the statute of limitations in a Rule 23 action only because of a judicially-created equitable tolling rule. *See American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 558 (1974). The Supreme Court has rejected the proposition that Rule 23 violates the test of *Shady Grove* on account of its equitable tolling rule. *See China Agritech v. Michael H. Resh*, 584 U.S. 732, 745–46 (2018) (noting that plaintiffs seeking equitable tolling under Rule 23 "may do so, in limited circumstances, . . . due to a judicially crafted tolling rule that itself does not abridge, enlarge, or modify any substantive right").

28

Second, Capital One argues that "[c]omity considerations" support its motion to strike. (ECF No. 24, at 13.) In *Shady Grove*, Justice Stevens explained that courts must consider "the degree to which the [federal] Rule makes the character and result of the federal litigation stray from the course it would follow in state courts." *Id.* at 419 (Stevens, J., concurring). Capital One posits that allowing plaintiffs to proceed with a VOWA class action under Rule 23 would be "perverse." (ECF No. 24, at 13.) As Capital One sees it, plaintiffs bringing overtime claims may only bring a collective action under the FLSA, but can work around that requirement by bringing a VOWA claim under Rule 23. (ECF No. 24, at 13.) However, "[t]hat is not the test set forth in the *Shady Grove* concurrence." *Heppard*, 705 F. Supp. 3d at 841. Justice Stevens instead asks whether the state law at issue "is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring). The Court has already concluded that the VOWA's collective action procedure is not so intertwined with a state right or remedy. Moreover, the Court is satisfied that its examination of the VOWA has demonstrated "sensitivity to important state interests and regulatory policies." *Id.* at 418 (Stevens, J., concurring) (citation omitted).

In his *Shady Grove* concurrence, Justice Stevens repeatedly reminds courts that "the bar for finding an Enabling Act problem is a high one." *Id.* at 432. "The mere possibility that a federal rule would alter a state-created right is not sufficient. There must be little doubt." *Id.* The Court remains doubtful that Rule 23 alters substantive state-created rights under the VOWA. The VOWA establishes a substantive right to pursue overtime compensation. The VOWA's collective action procedure merely creates a different mechanism to enforce that substantive right. Accordingly, Rule 23 displaces the VOWA's collective action procedure, and the Court

will deny Capital One's motion to strike Plaintiffs' class allegations as violative of the Rules Enabling Act.

### B. Capital One Prematurely Challenges the Sufficiency of Plaintiffs' Rule 23 Class Action Allegations

Capital One next moves to strike Plaintiffs' class allegations for their failure to satisfy the requirements of Rule 23. (ECF No. 24, at 17–18.) A court "may strike from a pleading" class allegations "on motion made by a party" or "require that the pleadings be amended to eliminate" the class allegations. Fed. R. Civ. P. 12(f)(2); 23(d)(1)(D). However, "[c]ourts should only grant a motion to strike class allegations before discovery if the allegations are 'facially and inherently deficient.'" *Bryant v. King's Creek Plantation, L.L.C.*, No. 4:20-cv-00061, 2020 WL 6876292, at *2 (E.D. Va. June 22, 2020) (internal citations omitted). If "the dispute concerning class certification is factual in nature and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature." *Id.* Movants typically face a high bar in seeking motions to strike, which "are viewed with disfavor and are granted only for egregious violations." *Hill*, 2022 WL 3371321, at *2.

Capital One asserts that Plaintiffs "have not plausibly alleged that the[ir] putative subclasses are ascertainable or that they satisfy Rule 23's commonality, predominance, and manageability requirements." (ECF No. 24, at 17–18.) These arguments are premature. Courts rarely grant a motion to strike class allegations on the pleadings, because "whether a class action can be maintained . . . normally requires a review of more evidence and argument than a complaint can provide." *Fobbs v. Hunt*, No. 3:21cv26 (DJN), 2021 WL 1792087, at *14 (E.D. Va. May 5, 2021). And Capital One has not identified any class allegations that are "facially and inherently deficient." *Bryant*, 2020 WL 6876292, at *2. Rather, Capital One's detailed examination of Plaintiffs' proposed subclasses would be better suited for evaluation at the class

certification stage. Accordingly, the Court will deny Capital One's motion to strike Plaintiffs'
class allegations.

### C. Capital One Prematurely Challenges the Sufficiency of Plaintiffs' FLSA Collective Action Allegations

Capital One also attacks the sufficiency of Plaintiffs' FLSA collective action claims.

(ECF No. 24, at 27.) Capital One argues that Plaintiffs "have failed to plead facts

establishing that members of the putative collective are similarly situated" for purposes of an

FLSA collective action. (ECF No. 24, at 27.) Again, these arguments are premature. In order to

proceed with a collective action, plaintiffs typically file a motion for conditional certification of

the FLSA collective action after a court has ruled on any motions to dismiss. At that point,

district courts in the Fourth Circuit "have uniformly employed a two-step inquiry in deciding

whether to certify a collective action under the FLSA":

> First, upon a minimal evidentiary showing that a plaintiff can meet the substantive
> requirements of 29 U.S.C. § 216(b), the plaintiff may proceed with a collective
> action on a provisional basis. Second, following discovery, the court engages in a
> more stringent inquiry to determine whether the plaintiff class is "similarly
> situated" in accordance with the requirements of § 216, and renders a final decision
> regarding the propriety of proceeding as a collective action.

*LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 467 (E.D. Va. 2014) (quotation

omitted). Capital One's arguments against Plaintiffs' purported collective action would be better

suited at either of the two steps of the Court's collective action certification procedure. District

courts within and outside of the Fourth Circuit have persuasively concluded that similar

arguments are premature prior to the collective action certification stage. *See, e.g., Kramli v.*

*Ann Crittendon, Inc.*, No. 1:07-cv-566, 2007 WL 9757835, at *3 (M.D.N.C. Dec. 17, 2007),

*report and recommendation adopted*, 2008 WL 11492769 (M.D.N.C. Feb. 20, 2008); *Foster v.*

*JHM Enterprises, Inc.*, No. 5:10-cv-405-Oc-99TJC, 2011 WL 13295747, at *4 (M.D. Fla. Jan.

31

21, 2011), *report and recommendation adopted*, 2011 WL 13295748 (M.D. Fla. Mar. 10, 2011).

Accordingly, the Court will deny Capital One's motion to strike Plaintiffs' collective action

allegations.

### D.    The Named Plaintiffs State a Claim for Violations of the FLSA (Count I) and the VOWA (Count II)

Capital One moves to dismiss Plaintiffs' individual claims for overtime violations under

the FLSA and the VOWA on the grounds that Plaintiffs have failed to state a claim upon which

relief can be granted.  (ECF No. 24, at 28–31.)  For the reasons articulated below, the Court will

deny the motion.

### 1.    Legal Standard:  FLSA Overtime Claims

"[T]o make out a plausible overtime claim [under the FLSA], a plaintiff must provide

sufficient factual allegations to support a reasonable inference that he or she worked more than

forty hours in at least one workweek and that his or her employer failed to pay the requisite

overtime premium for those overtime hours."  *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th

Cir. 2017).  "Under this standard, plaintiffs seeking to [plausibly state a claim] must do more

than merely allege that they regularly worked in excess of forty hours per week without

receiving overtime pay."  *Id.* at 777 (citing *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir.

2012); *Dejesus v. HF Mgmt. Servs.*, LLC, 726 F.3d 85, 90 (2d Cir. 2013) (explaining that the

"requirement that plaintiffs must allege overtime without compensation in a 'given' workweek

[is] not an invitation to provide an all-purpose pleading template alleging overtime in 'some or

all workweeks'") (citations omitted).

A plaintiff asserting a claim under the FLSA may satisfy his or her "initial burden 'by

estimating the length of [his or] her average workweek during the applicable period and the

average rate at which she [or he] was paid, the amount of overtime wages she [or he] believes

she [or he] is owed, or any other facts that will permit the court to find plausibility.'" *Alley v. Quality Eco Techs., LLC*, No. 3:20-cv-355 (MHL), 2021 WL 1196188, at *9 (E.D. Va. Mar. 29, 2021) (quoting *Hall*, 846 F.3d at 777) (first alteration in original).

In looking to a plaintiff's claim for nonpayment of overtime wages under 29 U.S.C. § 207, a plaintiff must plead: "(1) that he [or she] worked overtime hours without compensation; and (2) that the employer knew or should have known that [the employee] worked overtime but failed to compensate him [or her] for it." *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 667 (D. Md. 2011). The Court follows the lenient approach detailed in *Butler*, requiring only that a plaintiff detail "the types of work activities that occupied Plaintiffs' alleged overtime hours [in order to] provide[] Defendants with sufficient notice of the basis of the allegations to form a response." 800 F. Supp. 2d at 668; see also *Rodriguez v. F & B Sols. LLC*, 20 F. Supp. 3d 545, 547 (E.D. Va. 2014) (noting "that a record of the precise number of hours worked is normally in the possession of the employer and as such, can often be obtained through discovery").

Although Plaintiffs need not allege the specific hours they worked in excess and did not receive compensation for, they must still allege "sufficient factual content from which the Court can infer [that a defendant] failed to pay overtime wages." *Peterson v. M.J.J., Inc.*, No. 16-cv-3629, 2017 WL 4098755, at *4 (D. Md. Sept. 13, 2017). A plaintiff may meet this initial burden "by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, *or any other facts* that will permit the court to find plausibility." *Hall*, 846 F.3d at 777 (emphasis in original) (internal citations omitted). Plaintiffs here have met these requirements.

### 2.    The Named Plaintiffs Plausibly Allege FLSA and VOWA Overtime Violations

Plaintiffs have sufficiently alleged that they worked overtime hours without compensation. Ms. Mullin "typically" worked Mondays through Fridays, from 7:30 a.m. to 4:00 p.m. "or later" in the office, and from 6:30 a.m. to 4:00 p.m. when working from home. (ECF No. 20 ¶¶ 33–34.) Moreover, "[d]uring one of [Ms.] Mullin's approved vacation leaves within the past three years, she was required to log in to Capital One's systems to answer questions and concerns from Capital One employees regarding the process or content that she was 'managing.'" (ECF No. 20 ¶¶ 40, 44.) Ms. Mullin "also was assigned to so-called 'pager duty' which required her to work after hours on more than one occasion." (ECF No. 20 ¶¶ 40, 44.) Ms. Mullin "typically worked in excess of 50 hours per week[,] including time working on weekends." (ECF No. 20 ¶ 45.)

When working from home, Ms. Guthrie typically began working between 7:00 and 8:00 a.m. and worked until 5:00 or 6:00 p.m., and that she would "respond to emails or do any other work as needed" in the evenings after work hours, Monday through Friday. (ECF No. 20 ¶ 35.) When working "in a 'hybrid' capacity," she would typically log in from home at 7:30 or 7:45 a.m. and arrive at the office around 9:00 a.m. (ECF No. 20 ¶ 36.) Ms. Guthrie would leave at approximately 5:00 p.m. after which she would "do work from home again in the evenings as needed[,]" Monday through Friday. (ECF No. 20 ¶ 36.) Ms. Guthrie "typically worked in excess of 47.5 hours per week including time working on weekends." (ECF No. 20 ¶ 46.)

Both named Plaintiffs "typically worked through lunch or ate lunch while working" and "often checked their emails, slack, and other messages late into the evenings and before going to bed each night, as well as on weekends and on vacation." (ECF No. 20 ¶ 42.) Capital One issued Plaintiffs iPhones and take-home laptops so that each could perform work "remotely and

34

at all hours." (ECF No. 20 ¶ 91.)  Taken together, these allegations plainly state a claim that Plaintiffs worked overtime hours without compensation.

Second, Plaintiffs have sufficiently alleged that Capital One "knew or should have known that [they] worked overtime but failed to compensate [them] for it." *Alley*, 2021 WL 1196188, at *9.  Although Capital One "did not require [them] to keep precise track of their hours worked" and "does not have accurate timekeeping records of the exact hours worked[,]" (ECF No. 20 ¶¶ 88–89), Plaintiffs contend that "Capital One is in possession of records (such as log-in records, badge swipes, emails, and instant messaging systems) which should reflect that Process Managers, Ops Associates, and Content Managers were performing work for Capital One in excess of 40 hours per week" (ECF No. 20 ¶ 95).  The Complaint states that "Capital One has a work culture where all salaried 'exempt' employees are expected to regularly work in excess of eight hours per day, and well in excess of 40 hours per week, including being available and responding to electronic messaging (emails, texts, instant messages (IM's) and the like) at all hours of the day or on weekends." (ECF No. 20 ¶ 90.)  These broader allegations mirror Plaintiffs' specific factual allegations about their own work in excess of 8 hours per day and 40 hours per week.  (*See* ECF No. 20 ¶¶ 33–46.)[15]

Accepting Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, these allegations "ultimately nudge[] Plaintiffs' claims against Defendants from the

---

[15] Capital One argues that Plaintiffs fail to state a claim in part because they "do not even estimate the overtime wages they are owed." (ECF No. 24, at 30.)  Capital One cites for this proposition this Court's assertion in *Alley* that "a plaintiff must at least allege approximate wages such that the Defendants will be able to frame a meaningful response." 2021 WL 1196188, at *8 (citation omitted).  However, this portion of the Court's opinion in *Alley* referred to the requirements that a plaintiff must meet in pleading a defendant's failure to pay minimum wages under the FLSA, not a failure to pay overtime wages.

merely conceivable to the plausible." *Hall*, 846 F.3d at 778. Plaintiffs plainly state a claim for

violations of both the FLSA and the VOWA. The Court will deny the motion to dismiss.

### D. Plaintiffs Have Adequately Pled Willfulness, Entitling Them to a Three-Year Statute of Limitations at this Stage of the Proceedings

Finally, Capital One asks the Court to strike Plaintiffs' allegations seeking damages

beyond the FLSA's two-year statute of limitations. (ECF No. 24, at 31.) If Plaintiffs allege that

an FLSA violation was "willful," the statute of limitations extends to three years. 29 U.S.C.

§ 255(a). The VOWA incorporates these rules. Va. Code § 40.1-29.2 (adopting the FLSA's

"applicable limitations"). An FLSA violation is "willful" when an employer "either knew or

showed reckless disregard for the matter of whether its conduct was prohibited by the statute."

*Walsh v. Kynd Hearts Home Healthcare, LLC*, 644 F. Supp. 3d 180, 187 (E.D. Va. 2022)

(quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

Capital One argues that "Plaintiffs have failed to plead any facts to support a claim that

Capital One willfully violated the FLSA, and thus the statute of limitations is two years, not

three." (ECF No. 24, at 31.) Capital One contends that the Amended Complaint makes only

"conclusory references" to "Capital One's supposed willful conduct." (ECF No. 24, at 31.)

The Court concludes otherwise. Plaintiffs have generally averred willfulness, (ECF No.

20 ¶¶ 96, 129, 150), but they also have pled additional facts supporting an inference that Capital

One willfully violated the FLSA. For instance, Ms. Guthrie states that "[w]hen working from

home on Mondays through Fridays, [Ms.] Guthrie typically began working between 7-8 a.m. and

worked until 5-6 p.m. In the evenings after work hours, [Ms.] Guthrie would respond to emails

or do any other work as needed." (ECF No. 20 ¶ 35.) Ms. Guthrie "regularly worked more than

40 hours per week, and typically worked in excess of 47.5 hours per week including time

working on weekends." (ECF No. 20 ¶ 46.) Ms. Mullin states that "[d]uring one of [her]

approved vacation leaves within the past 3 years, she was required to log in to Capital One's systems to answer questions and concerns from Capital One employees." (ECF No. 20 ¶ 40.) Ms. Mullin adds that she "was assigned to so-called 'pager duty' which required her to work after hours on more than one occasion." (ECF No. 20 ¶ 44.) Ms. Mullin "regularly worked more than 40 hours per week, and typically worked in excess of 50 hours per week including time working on weekends." (ECF No. 20 ¶ 45.) And both Plaintiffs describe Capital One as having "a work culture where all salaried 'exempt' employees are expected to regularly work in excess of eight hours per day, and well in excess of 40 hours per week." (ECF No. 20 ¶ 90.)

Accepting Plaintiffs' allegations as true, and drawing all inferences in the light most favorable to them, these allegations support the conclusion that Plaintiffs have pled a plausible claim of willful FLSA violations at this stage of the litigation. Other district courts within the Fourth Circuit, when faced with similar allegations, have found the same.[16] *See Aguirre v. Joe Thiesmann's Restaurant*, No. 1:19-cv-556 (AJT), 2019 WL 12267459, at *5 (E.D. Va. July 23, 2019) ("[A]t the motion to dismiss stage, the timeliness of an action based on the two or three year statute will be determined by whether a plaintiff has alleged a plausible FLSA claim and avers the employer's willful violation generally."); *Akers v. Cnty. Of Sampson*, No. 7:22-cv-43,

---

[16] Plaintiffs argue that Capital One's argument regarding the statute of limitations is premature. (ECF No. 30, at 29.) Plaintiffs cite, *inter alia*, *Ford v. Karpathoes, Inc.*, in which the District of Maryland ruled that a defendant's argument "that plaintiffs ha[d] not sufficiently pled facts indicating that defendants acted 'willfully' [was] misplaced because the question of whether defendants' alleged violations were 'willful' is not an element of plaintiffs' claims. Rather, plaintiffs' allegation merely anticipate[d] a limitations defense that defendants may raise." No. ELH–14–00824, 2014 WL 6621997, at *9 (D. Md. Nov. 20, 2024). But the courts listed above have addressed a challenge to the sufficiency of willfulness pleadings at this procedural stage. The Court therefore addresses Capital One's position at this juncture but will deny Capital One's motion to strike.

2022 WL 16936034, at *6–7 (E.D.N.C. Nov. 14, 2022); *Schmidt v. Charleston Collision Holdings Corp.*, No. 2:14-cv-01094, 2014 WL 10102245, at *5 (D.S.C. July 14, 2014).[17]

Accordingly, the Court will deny Capital One's motion to strike Plaintiffs' collective action allegations for seeking damages beyond the two-year statute of limitations. Capital One may raise its statute of limitations argument as the case proceeds, but Plaintiffs have plausibly pled willfulness for the purposes proving their entitlement to a three-year statute of limitations at this stage of the proceedings.

## V. Conclusion

For the reasons articulated above, the Court will deny the Motion. (ECF No. 23.)

An appropriate Order shall issue.

Date: **09/26/25**
Richmond, Virginia

_____ /s/
M. Hannah Lauck
United States District Judge

---

[17] Seemingly rejecting the weight of this authority, Capital One encourages the Court to adopt the test outlined in *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021). (ECF No. 24, at 29.) In *Whiteside*, the United States Court of Appeals for the Second Circuit rejected the plaintiff's argument that "the mere allegation of willfulness suffices in light of the general tenet that a plaintiff need not anticipate a defendant's possible affirmative defenses." *Id.*

But Capital One's argument misses the mark. The Court has applied the same test here. The Court has determined that Plaintiffs have made both general allegations of willfulness and have pled sufficient facts to support an inference of willfulness. *Whiteside* reached the opposite conclusion regarding that plaintiff, but the Second Circuit's finding flowed from a factual distinction, not a legal conclusion. The Court is satisfied that Plaintiffs have sufficiently pled willfulness at this juncture for the purposes of the FLSA statute of limitations.