**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| EILEEN MULLIN, *et al*., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:24-cv-816 (SLS) |
| | ) | |
| CAPITAL ONE SERVICES, LLC, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiffs Eileen Mullin and Sopha Guthrie bring this action individually and on behalf of all other similarly situated individuals against Defendant Capital One Services, LLC ("Capital One"), alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, *et seq.*, and the Virginia Overtime Wage Act ("VOWA"), Va. Code. Ann. § 40.1-29.2. This matter comes before the Court on Plaintiffs' Motion for Conditional Certification and Notice to Putative Class Members (the "Motion"),[1] in which they seek conditional certification of their FLSA claim for three collectives of employees.[2] (ECF No. 42.) The parties have submitted memoranda in support of their respective positions (ECF Nos. 42, 43, 52, 58 (redacted), 66 (sealed)), and the Court heard oral argument on the Motion (ECF Nos. 73, 74). Therefore, this matter is ripe for review. The Court exercises jurisdiction under 28 U.S.C. §§ 1331 and 1367 and with the consent of the parties under 28 U.S.C. § 636(c)(1). (ECF Nos. 49, 50, 51.) For the reasons

[1] Subsequent to briefing and oral argument on this Motion, Tony Johnson filed a Notice consenting to join this action as an opt-in Plaintiff. (ECF No. 82.)
[2] At this time, Plaintiffs move only for conditional certification of their FLSA claim. (ECF No. 43, at 1 n.1.) Plaintiffs intend to move for class certification of their VOWA claim at a later date. (ECF No. 43, at 1 n.1.)

stated below, the Court will GRANT IN PART and DENY IN PART the Motion. Specifically, the Court will conditionally certify the collectives at issue but modify the distribution plan for the notice sent to the potential members of the collectives.[3]

## I. PROCEDURAL HISTORY

On November 15, 2024, Plaintiff Mullin filed the original complaint against Capital One, asserting claims for unpaid overtime under the FLSA and VOWA on behalf of herself and all others similarly situated. (ECF No. 1.) On December 27, 2024, Plaintiff Guthrie joined the case as an opt-in Plaintiff. (ECF No. 6.) On January 31, 2025, Plaintiffs filed an Amended Complaint against Capital One, asserting claims for unpaid overtime under the FLSA and VOWA on behalf of themselves and all others similarly situated. (ECF No. 20, at 1-3.)[4] In the Amended Complaint, Plaintiffs seek, among other things, collective certification of their FLSA claims, class certification of their VOWA claims, and an award of unpaid wages, damages, liquidated damages, triple damages, pre-judgment and post-judgment interest, and attorneys' fees and costs. (ECF No. 20, at 25.)

Plaintiffs now move for conditional certification as to the FLSA claim only. (ECF No. 42.) Plaintiffs seek to represent three collectives of employees. Plaintiff Mullin seeks to represent (1) a collective of non-managerial Process Managers at the "Job Level" of Associate, Senior Associate, and Principal Associate;[5] and (2) a collective of non-managerial Content Managers at

---

[3] A Motion For Leave to File Exhibits to Plaintiffs' Reply in Support of Conditional Certification Under Seal (ECF No. 59) and Motion for Leave to File Plaintiffs' Original Unredacted Reply Brief in Support of Conditional Certification Under Seal (ECF No. 63) are also pending before this Court. The Court will address those Motions for Leave to Seal in a separate forthcoming Memorandum Opinion and Order.

[4] The Court cites to all documents in the record by their CM/ECF page number.

[5] In Plaintiff's Reply Brief in Support of Motion for Conditional Certification and Notice to Putative Class Members (ECF Nos. 58 (redacted), 66 (sealed)), Plaintiffs acknowledge that since "Plaintiff Guthrie's 2024 earnings make her an ill-suited representative of the Process manager

the "Job Level" of Associate, Senior Associate, and Principal Associate. (ECF No. 43, at 2; *see also* ECF No. 20, at 19.) Plaintiff Guthrie seeks to represent a collective of non-managerial Ops Associates at the "Job Level" of Associate, Senior Associate, and Principal Associate. (ECF No. 43, at 2; *see also* ECF No. 20, at 19.)

## II. FACTUAL BACKGROUND[6]

Capital One employed Plaintiff Mullin from 2014 until November of 2024. (ECF No. 43-1, at 1.) As relevant here, she worked as a Content Manager from December 2015 to October 2022, and then as a Process Manager until she separated from Capital One in 2024. (ECF No. 20, at 4; ECF No. 44, at 5.)

Capital One employed Plaintiff Guthrie from 1999 until December of 2024. (ECF No. 43-2, at 1.) She worked as an Ops Associate until March of 2024 and then as a Process Manager, with the same substantive job duties as an Ops Associate, until her separation from Capital One. (ECF No. 20, at 4-5, 9; ECF No. 44, at 5.)

Plaintiffs typically worked at least forty-five hours a week in their respective roles as Process Manager, Ops Associate, or Content Manager. (ECF No. 20, at 6-7; ECF No. 43-1, at 1; ECF No. 43-2, at 2.) Based on their observations and experience, Plaintiffs state that work hours

---

sub-class, . . . Plaintiff Guthrie will only serve as the Ops Associate sub-class representative. Plaintiff Mullin will continue serving as the representative for the Process Manager and Content Manager sub-classes." (ECF No. 58, at 1 (redacted); ECF No. 66, at 1 (sealed).)

[6] The Court looks to the Amended Complaint, Plaintiffs' declarations, and other evidence submitted in conjunction with the Motion in outlining the factual background. *See Thomas v. Maximus, Inc.*, No. 3:21-cv-498, 2022 WL 1482010, at *1 n.1 (E.D. Va. May 10, 2022) (finding it appropriate to base factual background on complaint allegations and Plaintiffs' declarations). To the extent Capital One produces conflicting evidence, at this stage, the Court does not resolve any factual disputes. *Edwards v. Optima Health Plan*, No. 2:20-cv-192, 2021 WL 1174724, at *3 (E.D. Va. Mar. 29, 2021).

and expectations for others holding those job titles was a nine-hour day, five days a week, or a forty-five-hour workweek. (ECF No. 43-1, at 1; ECF No. 43-2, at 2.)

Plaintiffs allege that Capital One's FLSA exemption analysis is applied to all Process Managers, Content Managers, and Ops Associates at the same "Job Level," and as a result, "the putative collective applies to all Process Managers, Content Managers and Ops Associates at the Associate, Senior Associate and Principal Associate Job Levels." (ECF No. 43, at 12.) Plaintiffs contend that the non-managerial Process Manager, Ops Associate, and Content Manager roles are "clerical in nature" and primarily "back-office," and that Capital One has misclassified employees in these positions as exempt and failed to pay overtime wages. (ECF Nos. 20, at 11; 43, at 18; 43-1, at 4; 43-2, at 5.)

Capital One organizes employee positions into "Job Families," which are "group[s] of similar profiles based on responsibilities" or other common characteristics. (ECF No. 43-6, at 6; ECF No. 53-1, at 6.) Within a "Job Family," there is a "Job Profile," and each "Job Profile" contains one "Job Level." (ECF No. 43-5, at 9-10; ECF No. 53-1, at 4-5.) For example, each "Job Level" of Process Manager belongs to a specific "Job Profile." (*See* ECF Nos. 43-5, at 9-10; 43-9, at 2-7.)

Capital One's FLSA classification process begins with "getting the most current and robust job description that applies to all of the folks in that job." (ECF No. 43-5, at 6.) For example, within the "Process Manager Job Family," the Process Manager job description generally applies to all Associates, Senior Associates, and Principals. (ECF Nos. 43-3, at 10-12; 43-4, at 2-3; 43-5, at 13.) Thus, although Process Managers may service different lines and manage different

processes, the general duties and "big picture" responsibilities of Senior and Principal[7] Process Managers are the same or similar throughout the company. (ECF Nos. 43-1, at 5; 43-3, at 6-7.) After obtaining an accurate job description, there is "usually an interview" with a Human Resources ("HR") business partner, compensation professional, and a business leader. (ECF No. 43-5, at 6.) Capital One then uses a template to evaluate "which, if any, exemption criteria has been met." (ECF No. 43-5, at 6.) The exemption determination reached will be the same for all employees within the same "Job Profile." (ECF No. 43-5, at 11; ECF No. 53-1, at 7.)

Process Managers assist lines of business across Capital One to ensure compliance with process. (ECF No. 43-1, at 3; ECF No. 43-2, at 3.) Process Managers define, build, implement, and refine processes that support the business. (ECF No. 43-3, at 7; *see also* ECF No. 43-9.) Primary duties and responsibilities remain the same or similar even though process managers may service different lines of business and manage different processes. (ECF No. 43-1, at 3; ECF No. 43-2, at 3.) At a high level, a job description for Process Manager applies to all Process Managers, regardless of level. (ECF No. 43-3, at 10-12; ECF No. 43-4.) According to Plaintiff Mullin, although Process Managers "may have [served] different lines of business[,] . . . their general duties were similar to mine, they worked similar hours to me, and were not paid overtime because Capital One classified [them] as 'exempt' from overtime." (ECF No. 43-1, at 5.)

Plaintiffs estimate approximately 979 Principal and Senior "Process Managers" have been classified as exempt from overtime pay by virtue of their job title and membership in the Process Manager family.[8] (ECF No. 43, at 6.) Plaintiff Mullin seeks to represent a collective of non-

---

[7] Associate Level Process Managers are not included in the collective because Capital One has classified them as "non-exempt" from overtime pay. (ECF No. 43-5, at 12.)

[8] Plaintiffs note that the Class lists produced by Capital One are "large filterable Excel files and have not been appended as exhibits." (ECF No. 43, at 6.) Plaintiffs provided the citation to the specific Excel file (C1-MULLIN00002541) as reference. (ECF No. 43, at 6.) Plaintiffs' reply

managerial Process Managers defined as:

> Any individual who, during any week in the prior three years: (1) worked for Capital One at the "Senior Associate" or "Principal Associate" Job Levels within the "Process Management Job Family", (2) was classified as exempt from overtime laws, (3) worked over forty (40) hours in any week (4) was an "Individual Contributor" in any such week, and (5) earned less than $107,432.00 in compensation ("Non-Managerial Process Managers").

(ECF No. 43, at 8.)

As with non-managerial Process Managers, non-managerial Content Managers handle various processes but from within the "Communications Job Family." (ECF No. 53-3, at 9; ECF No. 43-1, at 3.) Content Managers are responsible for documenting processes and ensuring the accuracy of published materials. (ECF No. 20, at 5.) They manage content, but do not create it. (ECF No. 43-1, at 3.) For example, Plaintiff Mullin worked on deploying content on digital signs and apps. (ECF No. 43-1, at 4.) Based on her experiences and observations, Plaintiff Mullin states that other content managers performed similar job duties even if they managed different content. (ECF No. 43-1, at 3-4.)

Plaintiffs estimate approximately 69 Associate, Senior Associate, and Principal Associate Content Managers earning less than $107,432.00 a year that have been classified as exempt from overtime pay.[9] (ECF No. 43, at 10.) Given this, Plaintiff Mullin seeks to represent an additional collective of non-managerial Content Managers consisting of:

> Any individual who, during any week in the prior three years: (1) worked for Capital One at the "Associate", "Senior Associate" or "Principal Associate" Job Levels, had the "Job Description" of "Content Manager" within the "Communications Job

---

indicates that the number is likely higher because Capital One had previously "withheld information regarding employees who signed a severance agreement." (ECF No. 58, at 2 (redacted); ECF No. 66, at 2 (sealed).) At oral argument, Plaintiffs stated this number could be over a thousand. (ECF No. 74, at 3.)

[9] Plaintiffs provided the citation to the specific Excel file (C1-MULLIN00002540) as reference. (ECF No. 43, at 10.) At oral argument, Plaintiffs stated this number could be about seventy-five. (ECF No. 74, at 3.)

> Family", (2) was classified as exempt from overtime laws, (3) worked over forty (40) hours in any week (4) was an "Individual Contributor" in any such week, and (5) earned less than $107,432.00 in compensation ("Non-Managerial Content Managers").

(ECF No. 43, at 9.)

Ops Associates resemble the clerical and support duties of Process Managers, but document processes related to data collection, review, and compliance. (ECF No. 43-2, at 3-4.) They monitor, gather, and present the data. (ECF No. 43-2, at 3.) In performing this role, Plaintiff Guthrie did not design the process or determine what data should be collected. (ECF No. 43-2, at 4.) Other Ops Associates perform similar back-office functions. (ECF No. 43-2, at 4; ECF No. 43-3, at 6; ECF No. 53-3, at 6.)

Plaintiffs estimate that around 266 Ops Associates at the Associate, Senior Associate, and Principal Associate "Job Levels" have been classified as exempt from overtime pay.[10] (ECF No. 43, at 11.) Plaintiff Guthrie seeks to represent an additional or sub-collective of non-managerial Ops Associates consisting of:

> Any individual who, during any week in the prior three years: (1) worked for Capital One at the "Associate", "Senior Associate" or "Principal Associate" Job Level, had the "Job Description" of "Ops Associate," "Principal Ops Associate", or "Senior Ops Associate" within the "Commercial [or CML] Job Family", (2) was classified as exempt from overtime laws, (3) worked over forty (40) hours in any week (4) was a "Individual Contributor" in any such week, and (5) earned less than $107,432.00 in compensation ("Non-Managerial Ops Associates").

(ECF No. 43, at 10.)

[10] Plaintiffs provided the citation to the specific Excel file (C1-MULLIN00002539) as reference. (ECF No. 43, at 11.) At oral argument, Plaintiffs stated this number could be around 310. (ECF No. 74, at 3.)

## III. STANDARD OF REVIEW

Under the FLSA, employees may bring a collective action against their employer on their own behalf and on behalf of those "similarly situated" to them. 29 U.S.C. § 216(b). According to the statute:

> An action to recover the liability prescribed in [§ 216(b)] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.*

Certification of a FLSA collective requires the representative plaintiffs to demonstrate that they and the putative class members are "similarly situated." 29 U.S.C. § 216(b). The FLSA does not define "similarly situated," and the United States Court of Appeals for the Fourth Circuit has not provided guidance on how this term should be applied. *Gregory v. Belfor USA Grp., Inc.*, No. 2:12-cv-11, 2012 WL 3062696, at *2 (E.D. Va. July 26, 2012). However, "[t]he prevailing framework applied throughout [the Eastern District of Virginia] and the Fourth Circuit for facilitating notice is the two-step *Lusardi* framework. *Hunter v. LaserShip, Inc.*, No. 1:24-cv-02345, 2025 WL 1399195, at *3 (E.D. Va. May 14, 2025) (named after *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987)). *See also Thomas v. Maximus, Inc.*, No. 3:21-cv-498, 2022 WL 1482010, at *2 (E.D. Va. May 10, 2022) ("[L]ike most federal courts across the country, district courts within the Fourth Circuit have 'uniformly' followed the approach set forth in [*Lusardi*].").[11]

---

[11] The Supreme Court has emphasized the importance of providing employees with "accurate and timely notice concerning the pendency of [a] collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170

**A. <u>The Court Will Apply the Prevailing Two-Step Approach Set Forth in *Lusardi*</u>**

Under the *Lusardi* framework, courts commonly refer to the first step as the notice stage or conditional class certification stage. *Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) ("The 'notice' stage of an FLSA collective action is also known as the 'conditional certification' stage."). At this initial stage, Plaintiffs "need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 564 (E.D. Va. 2006). The Court applies "a lenient standard in determining whether the proposed collective action is 'similarly situated' within the meaning of the FLSA" at step one. *Winks v. Va. Dep't of Transp.*, No. 3:20-cv-420, 2021 WL 2482680, at *2 (E.D. Va. June 17, 2021); *see also Purdham*, 629 F. Supp. 2d at 547. In other words, "'Plaintiffs must show that there are persons sufficiently similarly situated to Named Plaintiffs to raise similar legal issues as to coverage, exemption, or nonpayment of overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions.'" *Yerby v. City of Richmond*, No. 3:19-cv-393, 2020 WL 602268, at *3 (E.D. Va. Feb. 7, 2020) (quoting *Stone v. SRA Int'l, Inc.*, No. 2:14-cv-209, 2014 WL 5410628, at *2 (E.D. Va. Oct. 22, 2014)).

Under the FLSA and at the notice stage, "[t]he primary focus. . .is whether the potential plaintiffs are 'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.'" *Hernandez v. KBR Servs., LLC*, No. 3:22-cv-530, 2023 WL 5181595, at *5 (E.D. Va. Aug. 11, 2023) (quoting *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va.

---

(1989). Although the Fourth Circuit has not yet declared a conditional certification standard, it has affirmed that district courts are afforded discretionary authority to facilitate notice to potential plaintiffs in FLSA collective actions. *See Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 144 (4th Cir. 2018) (citing *Hoffmann-La Roche*, 493 U.S. at 170).

2008)). This requirement "aims to address collective-wide claims while avoiding becoming bogged down by individual differences among [putative collective] members." *Adrian Dail v. Both, Inc.*, No. 2:23-cv-276, 2025 WL 5273547, at *3 (E.D. Va. Aug. 21, 2025) (quoting *Houston*, 591 F. Supp. 2d at 832 (citations omitted)). Importantly, "similarly situated" plaintiffs need not be identically situated. *Hunter*, 2025 WL 1399195, at *3.

Although Plaintiffs must make a modest factual showing, in deciding whether they have carried their burden at this stage, the Court does *not* "resolve factual disputes, decide substantive issues, or evaluate credibility." *Chapman v. Saber Healthcare Grp., LLC*, 623 F. Supp. 3d 664, 672 (E.D. Va. 2022). If Plaintiffs make a "modest factual showing" that they and potential putative class members are "similarly situated" as to a common policy or plan that violated the FLSA, the Court will "conditionally certify the collective and authorize notice to similarly situated plaintiffs so that they can opt into the collective action." *Thomas*, 2022 WL 1482010, at *3; *see Archer v. Freedmont Mortg. Corp.,* No. GLR-12-1099, 2013 WL 93320, at *4 (D. Md. Jan. 7, 2013).

At the second step of collective certification, a defendant may move to decertify the collective, and the Court applies a "more stringent factual determination" to determine whether the putative collective meets the "similarly situated" standard. *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 467 (E.D. Va. 2014). Specifically, at the conclusion of discovery, the Court may decertify the collective action if it is apparent that Plaintiffs are not "similarly situated." *Id.* at 468; *see Hargrove v. Ryla Teleservices, Inc.*, No. 2:11-cv-344, 2012 WL 489216, at *9 (E.D. Va. Jan. 3, 2012).

**B. <u>The Court Declines to Apply Alternatives to the Two-Step Approach</u>**

Capital One asks this Court to reject the two-step *Lusardi* framework and instead apply the framework established by the United States Court of Appeals for the Fifth Circuit in *Swales*

*v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021). (ECF No. 52, at 12-13.) In the alternative, Capital One urges the Court to apply an intermediate standard and require more from Plaintiffs than a modest factual showing. (ECF No. 52, at 12-13.) Capital One contends that a higher standard is appropriate in this case because the parties "have engaged in more than five months of discovery." (ECF No. 52, at 12.) The Court discusses these alternative standards below but declines to adopt them. Instead, consistent with decades of established precedent and the weight of authority among courts in this circuit, it will continue to apply the two-step *Lusardi* framework.

In *Swales*, the Fifth Circuit rejected the two-stage collective certification process. 985 F.3d at 434. It instead directed courts to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated'" and "[o]nly [after preliminary discovery] determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs." *Id.* at 441. The Court located only one decision from the Eastern District of Virginia that followed *Swales*. *See Mathews v. USA Today Sports Media Grp., LLC*, No. 1:22-cv-1407, 2023 WL 3676795 at *3 (E.D. Va. Apr. 14, 2023). Other decisions consistently declined to adopt the *Swales* approach. *See, e.g.*, *Adrian Dail*, 2025 WL 5273547, at *12 (applying *Lusardi*, even though "the parties have already engaged in extensive discovery"); *Hernandez*, 2023 WL 5181595, at *6 (calling *Mathews* "an extreme outlier" and holding that *Swales* "does not bind this Court"); *Thomas*, 2022 WL 1482010, at *4 (noting that "the Court sees no compelling reason to deviate from twenty years of established precedent); *Midkiff v. Anthem Cos., Inc.*, 640 F. Supp. 3d 486, 493 (E.D. Va. 2022) (failing to find *Swales* persuasive enough to depart from longstanding Fourth Circuit practice of two-step FLSA certification). Considering the non-binding nature of *Swales* and in the absence of Fourth Circuit

guidance,[12] the Court follows the majority approach in this circuit and applies the two-step collective certification process.

Capital One next asks the Court to apply an intermediate standard at step-one of the certification process. Under this standard, courts require "a more stringent showing in cases where some, but not all, discovery has been completed, to determine whether Plaintiffs have demonstrated that they and the potential opt-ins are similarly situated." *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, 3:10CV592, 2011 WL 4351631, at *4 (W.D.N.C. Sept. 16, 2011). Capital One contends this heightened standard is appropriate because the parties have engaged in substantial discovery prior to the Motion's filing, including Capital One serving "verified responses to [twenty-four] interrogatories," "produc[ing] over 3,500 pages of responsive materials," and making witnesses available for depositions. (ECF No. 52, at 10.) Most courts in the Fourth Circuit, however, have declined to apply such an intermediate standard at the conditional certification stage, "even when some discovery has already been conducted." *Chapman*, 623 F. Supp. 3d at 673. *See McNeil v. Faneuil, Inc.*, No. 4:15-cv-81, 2016 WL 11673838, at *4 (E.D. Va. Aug. 3, 2016) (noting how it is "premature to conclude that the evidence [from limited discovery] is representative of what the plaintiffs would present given further discovery"); *Houston*, 591 F. Supp. 2d at 830-31 (applying the lenient standard at step one even after the parties engaged in discovery, including depositions of the parties' representatives).

This Court shares the concerns of other courts from this circuit who note the imprecise application of an intermediate standard. *See Essame v. SCC Laurel Operating Co., LLC*, 847 F.

---

[12] Plaintiffs contend that the Fourth Circuit "reaffirmed" the two-step certification process by "refus[ing] to hear an interlocutory appeal" asking the Court to adopt the *Swales* standard. (ECF No. 43, at 14 (citing *Maximus, Inc. v. Thomas*, 2022 U.S. App. LEXIS 21385 (4th Cir. Aug. 2, 2022)).) Contrary to Plaintiffs' suggestion, the Fourth Circuit did not adopt one standard over the other by declining to hear an interlocutory appeal.

Supp. 2d 821, 827 (D. Md. 2012) ("Intermediate connotes in the middle; therefore, the standard seems ideally suited for situations in which the parties have conducted approximately half of the discovery. But what about cases where. . .the parties have conducted only a third, a quarter, or even a fifth discovery? Are courts still to apply the intermediate standard? . . .Assuming this approach is analytically sound, the Court would nonetheless display disinclination to inject this much flexibility—and, by extension, uncertainty—into the remedial scheme that § 216(b) contemplates."). *See also McNeil*, 2016 WL 11673838, at *4. In any event, while the parties have engaged in discovery, the extent of discovery is not so substantial to justify altering the standard in the two-step approach. Since discovery remains ongoing and "the weight of Fourth Circuit authority is in favor of the traditional two-stage approach," this Court will apply the two-step *Lusardi* approach. *Long v. CPI Security Sys., Inc.*, 292 F.R.D. 296, 301 (W.D.N.C. 2013).

## IV. ANALYSIS

### A. Plaintiffs Have Made a Modest Showing Sufficient for Conditional Certification

At stage one of the certification process, Plaintiffs must show that they and putative collective members are "similarly situated." *McNeil*, 2016 WL 11673838, at *3. Although the Fourth Circuit has not set parameters for the "similarly situated" standard, courts generally agree it is a low bar at the initial step. *See Yerby*, 2020 WL 602268, at *2-3. Plaintiffs "need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Choimbol*, 475 F. Supp. 2d at 564. "Potential plaintiffs will generally be considered similarly situated when, collectively, they were victims of a common policy or scheme or plan that violated the law." *Archer*, 2013 WL 93320, at *4 (internal quotation marks omitted). Although Plaintiffs must put forth "some factual evidence" and provide more than "[m]ere allegations," Plaintiff's evidentiary burden at this stage

is "relatively lenient." *Purdham*, 629 F. Supp. 2d at 548. "[T]he primary focus at step one is on legal issues" and "plaintiffs' and prospective class members' circumstances do not need to be factually identical." *Edwards v. Optima Health Plan*, No. 2:20-cv-192, 2021 WL 1174724, at *4 (E.D. Va. Mar. 29, 2021). At this initial stage, Plaintiffs have met their burden of making the threshold showing of a common policy or plan and similarly situated potential plaintiffs.

Plaintiffs allege that they belong to and represent a collective of employees who performed similar duties and were subject to a common employee classification scheme in which Capital One misclassified them as exempt from the FLSA wage and hour provisions. (ECF No. 20, at 1.) Based on Plaintiffs' declarations (ECF Nos. 43-1, 43-2), deposition testimony from Capital One corporate designees (ECF Nos. 43-3, 43-5, 43-6, 58-5), and documents produced by Capital One (*see, e.g.*, ECF Nos. 43-4, 43-9), Plaintiffs have made a "modest factual showing" that the purported class members had the same or similar job functions as positions in their same "Job Level," were subject to a common overtime exemption classification made by Capital One, and were not paid compensation for overtime hours worked.

Plaintiffs have demonstrated that they, along with potential plaintiffs, are similarly situated with respect to Capital One's FLSA overtime exemption policy. This exemption determination is the same for all employees within the same "Job Profile." (ECF No. 43-5, at 9-11.) For example, for Process Managers, the exemption determination applies to all Process Managers within each Process Manager job profile, regardless of the line of business that they serve or the process they manage. (ECF No. 43-5, at 16.) At the notice stage, Plaintiffs and potential plaintiffs may be deemed similarly situated in that they performed similar job duties and are alleged victims of a common misclassification policy or plan. *See Yerby*, 2020 WL 602268, at *4-5. Through Plaintiffs Mullin and Guthrie's declarations, along with depositions and documents outlining how

Capital One applies overtime exemptions, Plaintiffs make a sufficient modest showing of the existence of similarly situated plaintiffs who could raise similar legal issues as to exemption and nonpayment of overtime arising from "a manageably similar factual setting with respect to their job requirements and pay provisions." *Id.* at *3.

Capital One argues that Plaintiffs have not satisfied even the lenient burden of demonstrating that they and putative collective members are similarly situated for multiple reasons. First, Capital One contends that Plaintiffs do nothing more than introduce "just their own declarations as evidence despite engaging in five months of discovery." (ECF No. 52, at 3.) As an initial matter, it asks the Court not to consider Plaintiffs' declarations about the similarity of job duties and work hours of Process Managers, Content Managers, and Ops Associates working across fifteen states. (ECF No. 52, at 15.) It contends that Plaintiffs' declarations are not based on first-hand knowledge and lack support for their observations and beliefs. (ECF No. 52, at 15.) Although the declarations are rather broad, Plaintiffs base their general statements on their experience and observations throughout their tenure at Capital One. (*See generally* ECF Nos. 43-1, 43-2.) As Plaintiffs point out, their "combined 35 years of experience working for Capital One would surely provide them with the requisite time to have experiences and make observations about the practices of their employer." (ECF No. 66, at 6.) These declarations provide sufficient evidence at least at the notice stage.

Capital One also argues that Plaintiffs "had exposure to just a tiny fraction of the putative collective" because they "each worked in one location in two or three in-scope roles." (ECF No. 52, at 14.) Therefore, Capital One contends that Plaintiffs' declarations are insufficient to certify a nationwide collective. (ECF No. 52, at 15 (citing *Chapman*, 623 F. Supp. 3d at 676).) In *Chapman*, the Court declined to certify a nationwide collective because "the declarants lack[ed]

personal knowledge about the policies or practices at other offices," specifically unlawful meal break practices at other locations. *Chapman*, 623 F. Supp. 3d at 676. Here, however, Plaintiffs allege a common misclassification scheme that applies to all employees in the collective, regardless of location. Courts have certified nationwide collectives in similar circumstances. *See, e.g.*, *Privette v. Waste Pro of N.C., Inc.*, No. 2:19-cv-3221, 2020 WL 1892167, at *6 (D.S.C. Apr. 16, 2020) ("[C]ourts have found that evidence with respect to a single location or single time period is sufficient for a showing of a company-wide violation."); *McNeil*, 2016 WL 11673838, at *6 (finding nationwide certification appropriate even though employees worked on different projects, used different electronic programs to record their time, and worked at multiple offices across the country because the plaintiff "presented allegations and evidence demonstrating an identical one-way rounding policy" applicable at the various offices). Thus, Plaintiffs' employment at a single Capital One location does not foreclose their ability to seek nationwide certification under these circumstances.

In addition, this argument incorrectly assumes that Plaintiffs "ask this Court to certify the putative collection based solely on their own declarations." (ECF No. 52, at 14.) Along with their declarations, however, Plaintiffs rely on depositions from Capital One designees and documents produced by Capital One. At the notice stage, this constitutes sufficient evidence demonstrating a uniform, nationwide process of classifying members of the proposed putative collective as exempt from overtime pay, resulting in potential wage and hour violations under the FLSA. (*See, e.g.*, ECF Nos. 43-5, at 6-9; 43-6, at 6-9; 58-5, at 4-5); *see Hunter*, 2025 WL 1399195, at *4 (citing *Hager v. Omnicare, Inc.*, No. 5:19-cv-484, 2020 WL 5806627, at *10 (S.D.W. Va. Sept. 29, 2020)).

Capital One disputes whether Plaintiffs have shown that the putative collective is subject to a common policy that potentially violated the law. (ECF No. 52, at 2, 24-26, 29-31.) It contends that pointing to a common classification scheme is not enough to show that employees are similarly situated because employees may perform different work even where they have the same job titles. (ECF No. 52, at 13, 24.) According to Capital One, this means that the Court "must 'review the actual job duties of those in that job category to determine whether they are similarly situated and whether the exemption defense can be collectively litigated.'" (ECF No. 52, at 11 (quoting *In re Fam. Dollar FLSA Litig.*, 637 F.3d 508, 518 (2011).) Capital One's own corporate testimony cuts against this argument. Capital One designees testified in depositions that the job descriptions reviewed for FLSA exemption purposes state the primary duties common to the entire job profile. (ECF No. 43-5, at 17.) While individual class members may manage various processes or content within their respective job families, Plaintiffs have presented allegations and evidence that Capital One has determined that employees in the putative class perform duties similar enough to be grouped together for purposes of an exemption determination under FLSA. (ECF Nos. 43-5, at 17; 43-6, at 6.) As Plaintiffs argue, "Capital One's FLSA exemption process implicitly suggests that each of the three's exemption classification was determined on an encompassing basis meaning that the collectives are cohesive and similarly situated." (ECF No. 43, at 11.) Again, at this initial stage of collective certification, Plaintiffs need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Choimbol,* 475 F. Supp. 2d at 564. Plaintiffs have done so on this record.

Finally, Capital One argues that the factual record developed thus far precludes conditional certification. (ECF No. 52, at 1, 17-28.) It contends that individualized inquiries will dominate

because Process Managers, Content Managers, and Ops Associates perform different job duties at different levels, support different lines of business, work from different locations, and work different schedules. (ECF No. 52, at 18-28.) Similarly situated plaintiffs, however, need not be identically situated. *Hunter*, 2025 WL 1399195, at *3. Even "[d]ifferences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination." *Brown v. Energy Servs. Grp. Int'l, Inc.*, No. 3:21-cv-611, 2021 WL 5889707, at *2 (E.D. Va. Dec. 13, 2021) (quoting *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011)). At this initial stage, the primary focus is "whether the potential plaintiffs are 'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.'" *Hernandez*, 2023 WL 5181595, at *5. "Concerns about the predominance of individualized nature of Plaintiffs' and the Putative Class Members' claims require merits-based analyses that courts wait to tackle during the decertification stage, after notice to potential plaintiffs is finalized and the parties have completed discovery." *Thomas*, 2022 WL 1482010, at *6.

Capital One also points to "declarations from dozens of putative collective members—showing that putative collective members perform different duties at different levels of rank and pay, with wide variation in schedules, work arrangements, and geographic locations." (ECF No. 52, at 3.)[13] It argues that under any standard of review, the Court must consider the record currently

[13] Because the Court is constrained at this initial stage from weighing conflicting evidence, these employee declarations are not particularly persuasive at the notice stage. Plaintiffs urge the Court to disregard these so-called "happy camper" declarations altogether. Courts in the Fourth Circuit generally afford them "'little or no weight' at the initial conditional certification step, 'given the risk that the employer secured such declarations through explicit or implicit coercion.'" *Thomas*, 2022 WL 1482010, at *6 (quoting *Spencer v. Macado's, Inc.*, No. 6:18-cv-005, 2019 WL 4739691, at *4 (W.D. Va. Sept. 27, 2019)); *Chapman*, 623 F. Supp. 3d. at 678 (declining to give weight to "happy camper" declarations produced by the defendant at the conditional certification stage); *Jones v. Casablanca*, No. 6:22-cv-02307, 2023 WL 4397396, at *5 (D.S.C. July 7, 2023) ("[C]ourts generally give little to no weight to 'happy camper' affidavits or declarations, similar to the two presented by Defendant, particularly because of the risk such declarations may have

before the Court in determining whether certification is appropriate. (ECF No. 52, at 14-15.) While the Court does not turn a blind eye to the record, much of Capital One's contentions raise disputes or conflicting evidence. "At this stage, the Court does not need to resolve factual disputes or decide substantive issues." *Edwards*, 2021 WL 1174724, at *3; *see also McNeil*, 2016 WL 11673838, at *3 ("[D]istrict courts need not 'engage in resolving factual disputes, decide substantive issues going to the merits of the case, or make credibility determinations' during the notice stage.") (quoting *Hargrove*, 2012 WL 489216, at *9). Capital One will have the opportunity after relevant discovery is complete to move to decertify, and at that time, Plaintiffs must bear a heightened evidentiary burden.

For these reasons, the Court conditionally certifies the three collectives and will order that appropriate notice issue to potential collective members.

### B. <u>Notice Procedures</u>

As their requested relief, Plaintiffs seek Court approval of a proposed Notice, Reminder, and Consent form attached to their motion. (ECF Nos. 43, at 19-22; 43-8.) Specifically, Plaintiffs ask the Court to order Capital One to provide the following information about potential members of the conditionally certified class within seven days: "names, current or last known addresses, e-mail addresses, phone numbers, cell phone numbers, and dates of employment." (ECF No. 43, at 20.) Plaintiffs contend that courts within the Fourth Circuit commonly require the production of such information for a conditionally certified class. (ECF No. 43, at 20-21 (citing cases).)

---

been obtained through coercion."). Capital One argues that these declarations "simply detail individual employees' job duties" and are not akin to "happy camper" declarations. (ECF No. 52, at 15 n.5.) In any event, at this stage, the Court does not resolve factual disputes or weigh conflicting evidence. *Spencer*, 2019 WL 4739691, at *3 (noting that discovery may support the defendant's arguments that "Plaintiffs' claims are essentially individualized in nature" but declining to review such evidence or resolve factual disputes at the notice stage).

Plaintiffs also ask the Court to approve circulating notices through mail, e-mail, and text message to increase the likelihood that each putative collective member will receive the notice. (ECF Nos. 43, at 21; 66, at 16-18; *see* ECF No. 43-8.) Finally, Plaintiffs seek a ninety-day notice period with a reminder notice circulated at the forty-five-day mark. (ECF Nos. 43, at 23; 66, at 17; *see* ECF No. 43-8.)

Capital One opposes the distribution plan presented by Plaintiffs. Specifically, Capital One describes Plaintiffs' proposed seven-day turnaround of putative collective information as "unreasonable" and instead requests fourteen days to provide information. (ECF No. 52, at 32.) Capital One also contends that the "disclosure of telephone numbers is an invasion of privacy for which Plaintiffs have articulated no special need" and argues that mailing addresses and personal email addresses should suffice. (ECF No. 52, at 32.) In addition, "Capital One objects to the length of the opt-in period, the number of communication methods, the use of text messaging, and the proposed reminder notice." (ECF No. 52, at 32.) In lieu of Plaintiffs' proposed distribution plan, Capital One "proposes a [sixty]-day opt-in period with notice sent via mail and email and no reminder." (ECF No. 52, at 32.)

The Court's supervisory role over collective actions is meant "to ensure that 'employees receiv[e] accurate and timely notice . . . so that they can make informed decisions about whether to participate.'" *Degidio*, 880 F.3d at 144 (4th Cir. 2018) (quoting *Hoffmann-La Roche*, 493 U.S. at 170 (1989)). With that goal in mind, courts "have broad discretion over the dissemination of notice." *Chapman*, 623 F. Supp. 3d at 680 (E.D. Va. 2022) (citing *Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 372 (N.D. W. Va. 2012)). Considering the positions of the parties and the circumstances of this case, the Court will permit initial notice by mail, email, and text message and allow for a sixty-day opt-in period. The Court will not permit a reminder notice.

Regarding the manner of distribution for notices, "[m]ail sent via the United States Postal Service is the default mechanism for disseminating notice, but courts routinely require the disclosure of email addresses because email has become a more reliable and ubiquitous method of communication than paper mailing." *Chapman*, 623 F. Supp. 3d at 680 (citing *O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 610 (S.D. W. Va. 2020)); *see also Privette*, 2020 WL 1892167, at *6 (D.S.C. Apr. 16, 2020) ("Courts in this district have found email to be an effective means of distribution that furthers the FLSA's broad remedial purpose."). Capital One agrees that if notice is ordered, it should be sent via mail and email. (ECF No. 52, at 32.) Capital One, however, opposes notice via text message. (ECF No. 52, at 32.)

District courts within the Fourth Circuit have split on whether to permit notice by text message, with some raising concerns over privacy interests and invasiveness and others comparing text messaging as akin to email. *See, e.g.*, *Chapman*, 623 F. Supp. 3d at 680-81 (citing cases and raising concern over invasiveness of notices sent via text message); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("[T]ext messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication."). This Court sides with the latter line of cases because "in recent years, . . . text messaging has become a ubiquitous form of communication." *Thomas*, 2022 WL 1482010, at *7. Given the prevalence of cell phone usage in today's society, text messaging provides an effective method of notice distribution without being an unwarranted invasion of privacy. *See id.* Courts in the Fourth Circuit routinely permit notice by mail, email, and text message. *See, e.g.*, *Hunter*, 2025 WL 1399195, at *6 (finding "text notices, and email notices" to be "fair and reasonable" methods of distribution); *Thomas*, 2022 WL 1482010, at *8 ("The Court authorizes Notice of the instant suit

by mail, email and text message, as courts throughout the Fourth Circuit commonly do."); *Gagliastre v. Capt. George's Seafood Rest., LP*, No. 2:17-cv-379, 2018 WL 9848232, at *5 (E.D. Va. Mar. 13, 2018) (permitting notice by mail, email, and text message). The Court sees no reason to depart from these methods of distribution in this case. Because the Court will permit notice via text message, Capital One shall provide to Plaintiffs' counsel the names, current or last known addresses, e-mail addresses, phone numbers, cell phone numbers, and dates of employment, of all potential members of the conditionally certified class in a useable electronic form within fourteen days of the date of this Order.

Regarding the duration of the opt-in period, "'[d]istrict courts in the Fourth Circuit generally authorize opt-in periods between thirty and ninety days.'" *Chapman*, 623 F. Supp 3d at 680 (quoting *Privette*, 2020 WL 1892167, at *7); *see, e.g.*, *Hunter*, 2025 WL 1399195, at *7 (finding ninety-day notice period "reasonable and consistent with notice periods typically provided in this Circuit and nationwide"); *Hernandez*, 2023 WL 5181595, at *9 n.7 (finding seventy-day opt-in period reasonable); *Thomas*, 2022 WL 1482010, at *8 (finding a ninety-day opt-in period "in line with courts in this circuit and nationwide"); *Privette*, 2020 WL 1892167, at *7 (finding sixty-day notice period appropriate); *Yerby*, 2020 WL 602268, at *7 ("The Court finds that sixty days for putative plaintiffs to return their signed consent forms for filing with the Court is appropriate for purposes of class certification."). Because the Court authorizes three methods of notice distribution, including two (email and text messaging) aimed at being more efficient and reliable, the Court will authorize a sixty-day opt-in period, the midpoint of the range typically authorized by courts in the Fourth Circuit. *Chapman*, 623 F. Supp 3d at 680.

Regarding Plaintiffs' reminder request, decisions in this circuit are divided on whether or not to permit such a reminder notice during the opt-in period, with some finding that reminder

notices raise concerns over harassment and perceived judicial partiality and others finding them appropriate to ensure receipt of notice. *Chapman*, 623 F. Supp. 3d at 681 (citing cases); *see also Hager*, 2020 WL 5806627, at *14 (noting that "district courts around the country have found reminder notices have a tendency to both stir up litigation . . . and inappropriately encourage putative plaintiffs to join the suit" (quoting *Byard*, 287 F.R.D. at 373). Here, once again, the Court will permit initial notice via mail, email, and text message, three methods of notification which in combination are meant to reasonably assure receipt of the notice. *See Lupardus v. Elk Energy Servs., LLC*, No. 2:19-cv-529, 2020 WL 4342221, at *9 (S.D. W. Va. July 28, 2020) ("The diversity of these three methods increases the likelihood that each class member[] will review the notice."). Because these three methods in combination are sufficient to apprise putative collective members of their rights, the Court finds no need for reminder notices. *See Midkiff v. Anthem Cos.*, 640 F. Supp. 3d 486, 497 (E.D. Va. 2022) (finding "that sending a total of five notices across three different communications is more than what is necessary to inform prospective plaintiffs of their possible ability to join this litigation" and that "two communications sent directly to prospective plaintiffs is adequate enough to inform them of their ability to join the case, while maintaining the appearance of judicial neutrality"); *Irvine*, 132 F. Supp. 3d at 711 ("In light of the Court's approval of the multiple methods to distribute the original notice, the Court is unpersuaded that additional notice is necessary and finds this may take on an element of harassment."). Once informed of their right to join (or not) and the associated deadline, putative collective members are free to act as they see fit.

Capital One also opposes the contents of Plaintiffs' proposed notice, contending that "among other things, it fails to fully define the collective; it does not articulate the connection between exempt status and overtime pay; it insufficiently describes Capital One's defenses; and it

does not explain how to opt in while engaging separate counsel." (ECF No. 52, at 31-32.) Capital One submits a proposed notice containing revisions to address these alleged deficiencies but does not further explain its position on these issues. (ECF No. 52, at 32; ECF No. 53-12.) In reply, Plaintiffs state that they "are amenable to meet and confer with Defendants on the form of the Notice and submit any unresolved issues to the Court." (ECF No. 58, at 17 (redacted reply); ECF No. 66, at 17 (sealed reply).) Accordingly, the Court will order the parties to meet and confer in good faith regarding the scope and contents of the notice and consent form and to ensure that the Notice and Consent form comply with this Memorandum Opinion.

In addition, the parties must meet and confer on revisions to the notice and consent form to reflect that this case is pending before a United States Magistrate Judge with the consent of the parties and that any opt-in plaintiffs are similarly consenting to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c)(1). The parties shall either jointly file a proposed notice and consent form or shall submit any unresolved issues to the Court within ten days.

## V. CONCLUSION

For the foregoing reasons, the Court will GRANT IN PART and DENY IN PART Plaintiffs' Motion for Conditional Certification and Notice to Putative Class Members (ECF No. 42). Specifically, the Court will conditionally certify the collectives but modify the distribution plan for the notice sent to the potential members of the collectives.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: September 30, 2026